# EXHIBIT 1

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ELECTRICAL WORKERS PENSION FUND, LOCAL 103, I.B.E.W., Individually and on Behalf of All Others Similarly Situated, | Civil Action No. |
| Plaintiff, | DEMAND FOR JURY TRIAL |
| v. | <u>CLASS ACTION</u> |
| BAXTER INTERNATIONAL, INC., JOSE E. ALMEIDA, BRENT SHAFER, JOEL T. GRADE, JAMES K. SACCARO, BRIAN STEVENS, HEATHER KNIGHT, and CLARE TRACHTMAN, | |
| Defendants. | |

**CLASS ACTION COMPLAINT FOR VIOLATIONS
<u>OF THE FEDERAL SECURITIES LAWS</u>**

**INTRODUCTION**

Plaintiff Electrical Workers Pension Fund, Local 103, I.B.E.W. ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based on personal knowledge as to Plaintiff's own acts and upon information and belief as to all other matters based upon the investigation conducted by and through counsel, which included, among other things, a review of the public U.S. Securities and Exchange Commission ("SEC") filings of Baxter International, Inc. ("Baxter" or the "Company"), Company press releases, conference call transcripts, investor presentations, analyst and media reports, and other public reports and information regarding the Company. Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein, which evidence will be developed after a reasonable opportunity for discovery.

**SUMMARY OF THE ACTION**

1.      This is a class action on behalf of all persons and entities that purchased or otherwise acquired Baxter common stock between February 23, 2022 and July 30, 2025, inclusive (the "Class Period"). Plaintiff brings this action seeking to recover damages caused by Defendants' (defined herein) violations of the federal securities laws under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.      Baxter is a global company that develops, manufactures, and markets medical products used in hospitals and other healthcare facilities. Among its product offerings, Baxter recently launched the Novum IQ Large Volume Pump ("Novum LVP"), a device used for the controlled delivery of intravenous ("IV") fluids that carry medications, blood products, and nutrients to patients. In late 2020, Baxter began selling the Novum LVP in Canada after receiving marketing authorization from Health Canada. Starting in April 2024, after multiple regulatory

delays, Baxter began selling the Novum LVP into the United States after the U.S. Food and Drug Administration ("FDA") granted sales clearance on the device. The importance of the North American sales rollout of the Novum LVP was underscored by Baxter executives who called the launch a "landmark achievement" and a "key focus area" that would be a "promising multiyear growth driver."

3.     Baxter has described the Novum LVP as "the latest pump out in the market" with "the most advanced safety features that are available" and as a "best-in-class" infusion platform designed to integrate with electronic medical record systems to provide safer delivery of medication. The Novum LVP was also intended to replace Baxter's Spectrum infusion pump, part of an older platform that lacked features offered by competitors, making the Novum LVP critical for Baxter to maintain and grow its share of the IV infusion pump market.

4.     This case is about how Baxter misled investors by portraying its Novum LVP as safe, while concealing systemic issues that put patients at risk of severe injury and death. Prior to launching the Novum LVP in the United States, Defendants assured investors that Baxter "[was] able to address all of [the] issues" that came up with the initial rollout in Canada, and that the U.S. launch would not be subject to the same issues. While the Novum LVP was rolling out in the United States, Defendant Jose Almeida, Baxter's former Chief Executive Officer, further assured investors that the launch was "going extremely well" and "one of the best launches that [he's] seen in [his] career." In reality, the launch was on the brink of failure due to recurring life-threatening defects in the devices that Baxter could not adequately correct.

5.     This complaint alleges that, throughout the Class Period, Defendants misled investors by failing to disclose that: (a) the Novum LVP suffered systemic defects that caused widespread malfunctions, including underinfusion, overinfusion, and complete non-delivery of

fluids, which exposed patients to risks of serious injury or death; (b) Baxter was notified of multiple device malfunctions, injuries, and deaths from these defects; (c) Baxter's attempts to address these defects through customer alerts were inadequate remedial measures, when design flaws persisted and continued to cause serious harm to patients; (d) as a result, there was a heightened risk that customers would be instructed to take existing Novum LVPs out of service and that Baxter would completely pause all new sales of these pumps; and (e) based on the foregoing, Baxter's statements about the safety, efficacy, product rollout, customer feedback and sales prospects of the Novum LVPs were materially false and misleading.

6. Safety concerns regarding Novum LVP began to surface on April 7, 2025. On that date, a Missouri news outlet reported serious safety issues relating to inaccurate infusion rates with the Novum LVPs based on information from a whistleblower at a local hospital system. According to the whistleblower, "patients should not be being treated with these pumps. These pumps are not safe." When asked if any potential fixes to the safety issues had been sufficient, the whistleblower replied, "no, they have all been Band-Aid solutions." This report prompted the hospital system to take all its Novum LVPs out of service. Notwithstanding the whistleblower report, Baxter did not formally respond to multiple requests for comments and instead continued to tout the Novum LVPs as safe products with a successful launch. Major national news outlets did not pick up the story, allowing Baxter to contain the fallout and continue misleading investors about the success of the Novum LVP rollout.

7. Just weeks after the whistleblower report, on April 24, 2025, Baxter sent customers a warning letter about a potential underinfusion risk associated with the Novum LVP, disclosing only one serious injury linked to this issue. Then, on July 14, 2025, Baxter issued a second warning letter reiterating an underinfusion risk along with an additional risk of overinfusion. In the second

letter, Baxter revealed that it had received 79 reports of serious injury and two reports of patient deaths related to the Novum LVP.  Despite these serious hazards, Baxter did not instruct hospitals to remove the Novum LVP from service but instead told hospitals to implement correction steps while continuing to use the devices.  The FDA subsequently classified these issues as a Class I recall, its most serious designation, reflecting a risk of severe injury or death.

8.      Finally, on July 31, 2025, the true extent of the safety issues was revealed to the market when Baxter announced the suspension of all new Novum LVP sales.  Specifically, Baxter informed investors that it would "*voluntarily and temporarily pause shipments and planned installations of the Novum LVP*" and that the Company was "unable to currently commit to an exact timing for resuming shipment and installation for Novum LVPs."  Defendants further admitted that the Company had been closely monitoring the performance of the Novum LVPs in the field and that the Company was offering its older "Spectrum infusion pump as an alternative." Specifically, Defendant Heather Knight, Baxter's Chief Operating Officer, stated that this abrupt sales halt was prompted by issues "we saw through our quality listening systems, customer feedback, and honestly our infusion data."  Analysts were surprised by the sales halt given Baxter's continuous statements of optimism about the success of the Novum LVP rollout.  For example, analysts at Wells Fargo stated that "while we have seen the recent FDA alert relating to underinfusion risk associated w/ Novum, the sales pause came as a surprise."  On this news, Baxter stock dropped *22.4 percent*, closing at $21.76 on July 31, 2025.

9.      As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's common stock pursuant to the revelation of the fraud, Plaintiff and other members of the Class (defined herein) have suffered significant damages.

## I.    JURISDICTION AND VENUE

10.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (*see* 17 C.F.R. § 240.10b-5).

11.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  The Company's principal offices are located in this District.  Substantial acts in the furtherance of the alleged fraud or the effects of the fraud have occurred in this District.  Defendants' wrongful acts also arose in, emanated from, and caused harm in this District.  Such acts include the dissemination of false and misleading statements into this District.

13.    In connection with the acts, transactions, and conduct alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, the United States mail, interstate telephone communications, and the facilities of a national securities exchange, the New York Stock Exchange.

## PARTIES

### A.    Plaintiff

14.    Plaintiff purchased or otherwise acquired Baxter common stock during the Class Period and was damaged as a result of the Defendants' wrongdoing alleged in this complaint.

### B.    Defendants

15.    Defendant Baxter is a Delaware corporation with its principal place of business located at One Baxter Parkway, Deerfield, Illinois 60015 and its common stock trades on the NYSE under the ticker symbol "BAX."

16.     Defendant Jose E. Almeida ("Almeida") served as Baxter's Chief Executive Officer, President, and Chair of the Board of Directors until February 2025.

17.     Defendant Brent Shafer ("Shafer") served as Baxter's Interim Chief Executive Officer and Chair of the Board of Directors from February 2025 until August 2025.

18.     Defendant Joel T. Grade ("Grade") has served as Baxter's Chief Financial Officer since October 2023.

19.     Defendant Brian Stevens ("Stevens") served as Baxter's interim Chief Financial Officer from May 2023 until October 2023 and has served as Baxter's Chief Accounting Officer at all relevant times.

20.     Defendant James K. Saccaro ("Saccaro") served as Baxter's Chief Financial Officer until May 2023.

21.     Defendant Heather Knight ("Knight") has been Baxter's Chief Operating Officer since February 2025.

22.     Defendant Clare Trachtman ("Trachtman") was at all relevant times Baxter's Vice President of Investor Relations.

23.     Defendants Almeida, Shafer, Grade, Knight, and Trachtman, are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Baxter's reports to the SEC, press releases, and presentations to securities analysts, money portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information

7

available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations which were being made were then materially false or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## II. SUBSTANTIVE ALLEGATIONS

### A. Company Background

24. Baxter is a global, diversified healthcare company that develops, manufactures, and markets a variety of healthcare products used by hospitals, clinics, dialysis centers, nursing homes, rehabilitation centers, doctors' offices, clinical and medical research laboratories, and patients in their homes. Baxter's operations are made up of three segments: Medical Products & Therapies ("MPT"), Healthcare Systems & Technologies, and Pharmaceuticals. The MPT segment includes sales of sterile IV solutions, infusion systems, administration sets, parenteral nutrition therapies and surgical hemostat, sealant and adhesion prevention products.

25. Among other things, the MPT business manufactures and sells products that deliver IV fluids to patients. The Novum LVP, Baxter's flagship IV product and one of its most important growth drivers, is a computer-controlled device designed to administer medications and IV fluids with precision. Baxter's marketing materials touted the Novum LVP's titration error prevention technology, "which allows Novum IQ pumps to intercept dose and rate changes that could be potentially harmful" and that the Novum LVP is "intended to aid in the reduction of operator interaction."

26. Baxter further described the Novum LVP as "the latest pump out in the market" with "the most advanced safety features that are available" and as a "best-in-class" infusion platform designed to integrate with electronic medical record systems to provide safer delivery of

medication. According to Baxter executives, the Novum LVP launch was a "landmark achievement" that would be a "promising multiyear growth driver" for the Company.

27. In 2020, Baxter gained marketing approval in Canada while its FDA application was pending. During the first few years in Canadian hospitals, the Novum LVPs had safety issues that posed serious health risks to patients. Specifically, these pumps were under-and over-medicating patients. Despite these flaws, Baxter assured the FDA and investors that these issues had been resolved, and in April 2024, the Company received FDA clearance to sell the Novum LVP in the United States.

28. As the Class Period progressed, Defendants continued to tout the rollout of the Novum LVP in the United States, while failing to fully disclose the heightened risk of a sales halt due to recurring safety issues that could not be adequately corrected. As these issues came to light, Baxter sent warning letters to customers and ultimately paused all new shipments of the Novum LVP in the United States and Canada.

**B. Materially False and Misleading Statements Issued During the Class Period**

29. The Class Period begins on February 23, 2022, when Baxter filed with the SEC a Form 10-K reporting the Company's financial results for the fiscal year ended December 31, 2021 (the "2021 10-K"). The 2021 10-K contained the following statement concerning the Company's quality management:

> **Quality Management**
>
> Our continued success depends upon the quality of our products. Quality management plays an essential role in determining and meeting customer requirements, ***helping to prevent defects***, facilitating continuing improvement of our processes, products and services, and ***helping to assure the safety and efficacy of our products***. Our quality system enables the design, development, manufacturing, packaging, sterilization, handling, distribution and labeling of our products to ensure that they conform to customer requirements. In order to consistently improve the effectiveness and efficiency of our quality system, various

9

measurement, monitoring and analysis methods, such as management reviews and internal, external and vendor audits, are employed at local and central levels.

Each product that we market is required to meet specific quality standards, both in packaging and in product integrity and quality. If any of those is determined to be compromised at any time, *we endeavor to take corrective and preventive actions designed to ensure compliance with regulatory requirements and to meet customer expectations*.

30. The 2021 10-K also contained the following statement concerning the Company's

regulatory obligations:

**Government Regulation**

Our operations and many of the products manufactured or sold by us are subject to extensive regulation by numerous government agencies, both within and outside the United States.

[… ]

We, along with our facilities, are subject to periodic inspections and possible administrative and legal actions by FDA and other regulatory agencies inside and outside the United States. Such actions *may* include warning letters, product recalls or seizures, monetary sanctions, injunctions to halt the manufacture and distribution of products, civil or criminal sanctions, refusal of a government to grant approvals or licenses, restrictions on operations or withdrawal of existing approvals and licenses. As situations require, we take steps to ensure safety and efficacy of our products, such as removing products found not to meet applicable requirements from the market and improving the effectiveness of quality systems.

31. The 2021 10-K also contained the following risk factors concerning potential

product quality issues:

Issues with product supply or quality *could* have an adverse effect on our business or cause a loss of customer confidence in us or our products, among other negative consequences.

[…]

*Our success also depends on our ability to maintain and routinely improve product quality and our quality management program*. Quality management plays an essential role in meeting customer requirements, preventing defects, improving our products and services and assuring the safety and efficacy of our products. *While we have a quality system that covers the lifecycle of our products, quality and safety issues have and may in the future occur with respect to our products.* New or unintended uses of our product (for example, in response to

10

COVID-19 or changing clinical practice) may also raise quality or safety issues. A quality or safety issue *may* result in adverse inspection reports, voluntary or official action indicated, warning letters, import bans, product recalls (either voluntary or required by FDA or similar governmental authorities in other countries) or seizures, monetary sanctions, injunctions to halt manufacture and distribution of products, civil or criminal sanctions, costly litigation, refusal of a government to grant approvals and licenses, restrictions on operations or withdrawal of existing approvals and licenses.

[…]

An inability to address a quality or safety issue in an effective and timely manner *may* also cause negative publicity, a loss of customer confidence in us or our current or future products, which *may* result in the loss of sales and difficulty in successfully launching new products.

32. On the same day, Defendants Saccaro and Trachtman participated in the Citi Research Healthcare Conference (the "Citi Call"). During the Citi Call, Defendant Saccaro stated that "[T]he reason the pump is exciting is it really leverages all of the best things that we have with our pump, including the Master Drug Library, *the medication safety provisions that we have with respect to it*, simple and easy user interface."

33. During the Citi Call, Defendant Almeida was also asked about new product launches:

Joanne Wuensch, Citigroup: When we think about product launches and we've already been talking about one. What others are you most excited about for 2022?

Defendant Saccaro: Sure, I'll answer and then can turn it over to Clare as well. On the Baxter side, *I think Novum is a landmark. When that launches, it will be a landmark achievement for the company. And I think it's a -- it really sets the stage for continuing this idea and continuing leadership in connected care and solving problems for hospitals in new and different ways*. So we're so thrilled that, that one is in the works.

34. On March 7, 2022, Defendants Saccaro and Trachtman participated in the Raymond James Institutional Investors Conference (the "Raymond James Call"). During the Raymond James Call, Defendant Saccaro was asked about the Novum launch:

11

First of all, it's the first time that Baxter will have three pumps on the same platform. Second, *the Novum pump incorporates all of our learnings from being in the large volume pump business for perhaps the last 20 years into this next generation pump. Things like a drug safety library*, things like simple and easy to use interface, all of these things have been incorporated into the new pump and we will be thrilled to bring this to market. And then following that, follow it on with a couple of incremental pumps.

So very exciting for us, and I think it's a – we've been doing quite well with the Spectrum pump that we have on the market today. It's a testament to the quality of that pump as well but *I do believe that launching Novum gives us the next leg to drive growth for years to come*.

35.     On March 17, 2022, Defendants Saccaro and Trachtman participated in the Barclays Global Healthcare Conference (the "Barclays Call"). During the Barclays Call, Defendant Saccaro stated that "I think that *the Novum pump will be an important long-term value driver for the company*."

36.     On April 28, 2022, the Company filed with the SEC a Form 10-Q reporting the Company's financial results for the first quarter of 2022 (the "Q1 2022 10-Q"). The Q1 2022 10-Q was signed by Defendant Saccaro and included certifications signed by Defendant Almeida and Defendant Saccaro pursuant to Section 906 of the Sarbanes-Oxley Act of 2022 (the "SOX Act"). In the Q1 2022 10-Q, the Company stated that "We do not believe there have been any material changes to the risk factors previously disclosed in our [2021 10-K]." The 2021 10-K risk factors are identified in ¶ 31, *supra*.

37.     On the same day, the Company hosted an earnings call for the first quarter of 2022 (the "Q1 2022 Call"). During prepared remarks on the Q1 2022 Call, Defendant Almeida stated:

As you saw in this morning's release, we shared a status update on our Novum IQ large volume infusion pump with Dose IQ Safety Software, which has been under review by FDA. We received the letter from the agency last Friday with a request for additional information. As a result, the 510(k) review window has been placed on hold so that our team can address accordingly.

The team currently plans to respond to FDA within the calendar year. We remain on track to submit responses on the Novum IQ Syringe Pump filing to FDA in the

12

second quarter of 2022. I want to emphasize that while we can't speak for FDA or the eventual outcome of their review process, ***we are confident in our leading-edge Novum IQ technology. We are committed to responding to FDA's request and to bringing the benefits of Novum IQ to patients and clinicians in the US and beyond***.

38.     During the question and answer portion of the Q1 2022 Call, Defendant Almeida was asked about the delay:

Danielle Antalffy, SVB Leerink:  Just one question on the Novum platform. I'm just curious, Joe, this delay here, if that changes your view of the potential longer term or even in the mid-term, once the platform does launch and the market share gains that Baxter should be able to get? And then I have one follow-up.

Defendant Almeida: Danielle, good morning. We have received the letter. We understand what needs to be addressed, and we plan to address towards the end of the year, like we just said in our prepared remarks. Addressing the request does not change the faith I have in the product line. ***We have this product currently working in Canada and is, from my perspective, a great product***. We have tremendous respect for what the agency says and I don't speak on behalf of the FDA. So we're working very closely to make sure that we can address the outstanding main issue as soon as we can [unintelligible] end of the year.

***I have faith in the platform***. We designed that from scratch. It was the first electromechanical product designed by Baxter from scratch. We put the resources in place and we're still very optimistic about what it can do in the marketplace. So it's a great technology and – but this is my opinion, and I hope that we can get this clear towards the end of the year.

39.     On May 25, 2022, Baxter hosted an investor conference where Defendant Knight emphasized Baxter's confidence in the Novum platform and highlighted positive customer feedback from Canada, stating:

And as you know, we're looking forward to the launch of NOVUM IQ in the US upon receiving FDA approval. Now, we can't speak on behalf of the FDA, but ***I remain very, very confident in this platform, because of the feedback we've gotten from our customers, because of the feedback our customers have given us in the design of this platform, and because our customers in Canada are already enjoying this platform today, and we're getting great feedback***. So I'm very, very excited, and while it's been a long road, ***I'm optimistic as ever about the launch of Novum IQ***.

13

40.     On July 28, 2022, the Company filed with the SEC a Form 10-Q reporting the Company's financial results for the second quarter of 2022 (the "Q2 2022 10-Q"). The Q2 2022 10-Q was signed by Defendant Saccaro and included certifications signed by Defendant Almeida and Defendant Saccaro pursuant to Section 906 of the SOX Act. In the Q2 2022 10-Q, the Company stated that "We do not believe there have been any material changes to the risk factors previously disclosed in our 2021 Annual Report" (the "2021 10-K"). The 2021 10-K risk factors are identified in ¶ 31, *supra*.

41.     On October 27, 2022, the Company hosted an earnings call for the third quarter of 2022 (the "Q3 2022 Call"). During the Q3 2022 Call, Defendant Almeida stated that he "believe[d] that [Baxter] ha[d] successfully resolved the issue that was the primary subject of the FDA's last additional information request." Defendant Almeida added that the Company was "very comprehensive in how we answer the FDA. We work very collaboratively with them, and we want to make sure that the product has all the information before we send to them."

42.     That same day, the Company filed with the SEC a Form 10-Q reporting the Company's financial and operational results for the third quarter of 2022 (the "Q3 2022 10-Q"). The Q3 2022 10-Q was signed by Defendant Saccaro and included certifications signed by Defendant Almeida and Defendant Saccaro pursuant to Section 906 of the SOX Act. In the Q3 2022 10-Q, the Company stated that "we do not believe that there have been any material changes to the risk factors previously disclosed in our [2021 10-K]." The 2021 10-K risk factors are identified in ¶ 31, *supra*.

43.     On February 9, 2023, the Company hosted an earnings call for the fourth quarter of 2022 (the "Q4 2022 Call"). During the Q4 2022 Call, Defendant Almeida touted the success of Novum LVP in Canada, stating "[w]e feel optimistic where we are with the pump today. We don't

14

speak on behalf of the FDA. Neither [sic] we're making a prediction about that, ***but we're saying that we're enthusiastic because we know the products are doing very well in Canada***."

44.     That same day, the Company filed with the SEC a Form 10-K reporting the Company's financial and operational results for the year ended December 31, 2022 (the "2022 10-K"). The 2022 10-K was signed by Defendant Almeida, Defendant Saccaro, Defendant Stevens, as well as other members of Baxter's Board of Directors, and included certifications signed by Defendant Almeida and Defendant Saccaro pursuant to Section 906 of the SOX Act. The 2022 10-K contained substantially the same risk factors identified in ¶ 31, *supra*.

45.     On April 27, 2023, the Company filed with the SEC a Form 10-Q reporting the Company's financial and operational results for the first quarter of 2023 (the "Q1 2023 10-Q"). The Q1 2023 10-Q was signed by Defendant Saccaro and included certifications signed by Defendant Almeida and Defendant Saccaro pursuant to Section 906 of the SOX Act. In the Q1 2023 10-Q, the Company stated that "we do not believe that there have been any material changes to the risk factors previously disclosed in our [2022 10-K]." The 2022 10-K contained substantially the same risk factors identified in ¶ 31, *supra*.

46.     On July 27, 2023, the Company hosted an earnings call for the second quarter of 2023 (the "Q2 2023 Call"). During the Q2 2023 Call, Defendant Almeida told investors that Baxter had resolved FDA concerns regarding Novum and was successfully incorporating updates from Novum LVP's launch in Canada, stating:

> [W]e believe we have successfully resolved the open issue that was primarily subject of the FDA's last additional information that they requested. ***Additionally, we have proactively implemented software changes that we had planned in consultation with the FDA. We have regular communications with the FDA during the review. We are committed to resolving any questions or issues that come up during the process and through learnings in connection with the recent launch of Novo LVP in Canada and related regulatory issues.*** So we are working on software upgrades to our current version of the Canadian pump. As we work

15

through this in the next few months, we work alongside the FDA to tell them what's going on. And we are cautiously optimistic. **We have a very good pump platform** and we want to get this thing done and through with the FDA. But we want to make sure that the best and most recent updates to the product are implemented before - in Canada and so we can communicate with the FDA properly. *We are in constant communications with them*.

47.  That same day, the Company filed with the SEC a Form 10-Q reporting the Company's financial and operational results for the second quarter of 2023 (the "Q2 2023 10-Q"). The Q2 2023 10-Q was signed by Defendant Stevens and included certifications signed by Defendant Almeida and Defendant Stevens pursuant to Section 906 of the SOX Act.  In the Q2 2023 10-Q, the Company stated that "we do not believe that there have been any material changes to the risk factors previously disclosed in our [2022 10-K]."  The 2022 10-K contained substantially the same risk factors identified in ¶ 31, *supra*.

48.  On September 7, 2023, at the Wells Fargo Securities Healthcare Conference, Defendant Almeida touted the effectiveness of the Novum LVP pump and further improvements the Company was making to prepare for the product for launch in the U.S., stating:

> *The intent is we because we have products launched in Canada, found a couple of changes that we need to make to software and hardware to the pump that we're currently undertaking the software we're finished, although we're doing a final review of software wise to make sure there's nothing else and hardware, there's a change -- two changes that we had to make. One was made already.*

> […]

> *We have remained optimistic on the pump. It's a great pump, works today. It's working on the market today.*

> […]

> *We put more resources than you can imagine to make sure that this product is absolutely what it needs to go into the US market. It is a product that has good precision, better than some products on market today in the US and has also a very good interface with the rest of hospital systems.*

16

49. On November 2, 2023, the Company hosted an earnings call for the third quarter of 2023 (the "Q3 2023 Call"). During the Q3 2023 Call, Defendant Almeida once again assured investors that the Company was "in continued and regular conversations with [the FDA] during their review period."

50. That same day, the Company filed with the SEC a Form 10-Q reporting the Company's financial and operational results for the third quarter of 2023 (the "Q3 2023 10-Q"). The Q3 2023 10-Q was signed by Defendant Grade and included certifications signed by Defendant Almeida and Defendant Grade pursuant to Section 906 of the SOX Act. In the Q3 2023 10-Q, the Company stated that "we do not believe that there have been any material changes to the risk factors previously disclosed in our [2022 10-K]." The 2022 10-K contained substantially the same risk factors identified in ¶ 31, *supra*.

51. On February 8, 2024, the Company filed with the SEC a Form 10-K reporting the Company's financial results for the year ended December 31, 2023 (the "2023 10-K"). The 2023 10-K was signed by Defendant Almeida, Defendant Grade, Defendant Stevens, as well as other members of Baxter's Board of Directors, and included certifications signed by Defendant Almeida and Defendant Saccaro pursuant to Section 906 of the SOX Act. The 2023 10-K contained substantially the same risk factors identified in ¶ 31, *supra*.

52. On February 29, 2024, at the Citi Unplugged Medtech and Life Sciences Access Day, Defendant Trachtman assured investors that Baxter's pending launch of the Novum LVP in the United States would reflect improvements to the device following its Canadian launch. Specifically, Defendant Trachtman stated that:

> We did launch Novum in Canada. And so as things emerged as part of that launch, what we did was we brought those to the attention of FDA and *we were able to address all of those issues that came up and that was part of the submission to*

17

**FDA. *So now, from our standpoint, we've addressed everything*** and we're cautiously optimistic that we'll hear something in 2024.

53. By at least March 2024, Baxter's corporate website posted Novum LVP marketing materials that promoted the device's safety and advanced technological features. For example, the Novum LVP Sell Sheet (dated March 22, 2024) included claims of "advanced technology to enhance safety and ease of use," and "Titration Error Prevention technology, which allows Novum IQ pumps to intercept dose and rate changes that could be potentially harmful." Likewise, the Novum LVP Brochure (dated April 1, 2024) contained similar claims, including that "a robust portfolio of administration sets is designed to deliver consistent accuracy with the Novum IQ Large Volume Pump." These marketing materials remained publicly available on Baxter's website as of September 16, 2025.

54. On April 1, 2024, the Company published a press release announcing U.S. FDA clearance of the Novum LVP. In the release, Defendant Knight said:

> ***Our goal, always, is to bring increased efficiency, safety and opportunity for informed decision-making to our customers, clinicians and the patients they serve***. The Novum IQ platform represents a meaningful shift in how connected and intelligent infusion therapy can impact the way clinicians provide care. Offering Novum IQ large volume and syringe infusion pumps unlocks the potential of advanced, intuitive technologies that customers seek to meet their needs.

55. On May 2, 2024, the Company hosted an earnings call for the first quarter of 2024 (the "Q1 2024 Call"). During the Q1 2024 Call, Defendant Almeida stated that "[w]e believe we're well positioned to build on our momentum in [Medical Products & Therapies] with the recent U.S. FDA clearance of our leading-edge Novum IQ large volume infusion pump and Dose IQ Safety Software."

56. That same day, the Company filed with the SEC a Form 10-Q reporting the Company's financial and operational results for the first quarter of 2024 (the "Q1 2024 10-Q"). The Q1 2024 10-Q was signed by Defendant Grade and included certifications signed by

18

Defendant Almeida and Defendant Grade pursuant to Section 906 of the SOX Act. In the Q1 2024 10-Q, the Company stated that "we do not believe that there have been any material changes to the risk factors previously disclosed in our [2023 10-K]." The 2023 10-K contained substantially the same risk factors identified in ¶ 31, *supra*.

57. At Baxter's annual shareholder meeting on May 7, 2024, Defendant Almeida reassured investors about the strength of the Novum launch and described the product as "best-in-class," stating:

> Another factor that is very important for Baxter is the growth through innovation . . . . *As an example, the approval of our Novum pump about three or four weeks ago is an indication how a best-in-class pump will be deployed into hospitals with the integration into EMRs, creating an environment, where clinicians can access a world-class drug library and able to bring together a safer delivery of medication to the patient*.

58. On May 15, 2024, at the Bank of America Healthcare Conference, Defendant Trachtman emphasized the Company's enthusiasm for Novum, explaining:

> *Again I would say we are – we're extremely pleased with Novum*. *It has some great features. It has some of the most advanced features out there*. It does offer both the syringe and LVP with it. So, we're excited about the opportunity to introduce this to customers. I think that we've had outreach already from a number of existing customers and some competitive customers. So, the teams are out there discussing the benefits that it will offer. So, we're very optimistic about what this means. We've kind of said that this is not only an opportunity for us to continue to maintain our installed base, but look at that competitive set as well.

59. On June 5, 2024, at the Jefferies 2024 Global Healthcare Conference, Defendant Trachtman touted Novum LVP's safety and superiority to Baxter's prior products, telling investors that "*[i]t has some of the most advanced safety features that are available*" and that the Company "*expect[s] to do even better with Novum.*"

19

60.     On August 6, 2024, the Company hosted an earnings call for the second quarter of 2024 (the "Q2 2024 Call"). During the Q2 2024 Call, an analyst asked Defendants about the rollout of Novum in the United States. In response, Defendant Almeida stated:

> We found -- as a matter of fact, we have sales of Novum in the second quarter, which we did not expect to have, but **we're a little faster in having the product ready for the market. What we've seen is great interest. It plays well for our ability to compete**.
>
> As you know, Spectrum is a great product, but it does not have a syringe pump, and having a syringe pump makes a huge difference. **So we're very happy with the momentum that we're getting in Novum.** We've been showing that to very large hospital systems and small as well. Our team is very hard at work. And **we feel confident in the technology**. So, we have the ability to take market share. I think that is an important thing. **This is about providing our patients and our customers with the best technology on the market**, not a reengineered technology from many, many years ago.

61.     That same day, the Company filed with the SEC a Form 10-Q reporting the Company's financial and operational results for the second quarter of 2024 (the "Q2 2024 10-Q"). The Q2 2024 10-Q was signed by Defendant Grade and included certifications signed by Defendant Almeida and Defendant Grade pursuant to Section 906 of the SOX Act. In the Q2 2024 10-Q, the Company stated that "we do not believe that there have been any material changes to the risk factors previously disclosed in our [2023 10-K]." The 2023 10-K contained substantially the same risk factors identified in ¶ 31, *supra*.

62.     On a September 5, 2024 Wells Fargo investor call, Defendant Grade told investors that Novum's launch had exceeded expectations and that Baxter had used the Canadian launch to work out any issues before bringing the product to the U.S., stating:

> **The launch itself has gone well**.
>
> […]
>
> **I mean I actually think we're off to a really good start in that.** I think the demand has been at levels probably even above what we expected. We've had kind of a mix

20

of wins between our existing customers as well as some competitive wins. We originally talked about the impact of that starting in the third quarter.

[…]

*I'd say the other thing, too, that I think is kind of something we haven't talked about that much, but I think it is an important part of this, is that product was actually launched in Canada for a couple of years.*

*So we actually have the ability to -- if there's some bugs or some tweaks that we had to do within that product, we got a lot of that taken care of by the time we actually launched it in the US. And so I think the reception of that has been really strong and again the launch itself has gone well and the demand for the product has been outstanding.*

63. On the same call, Defendant Trachtman emphasized Novum's advanced safety features and Baxter's optimism for future growth, saying:

I mean, I think that the features of Novum, it has over-the-air firmware updates that we can obviously apply those remotely. So it allows for many of the pumps to be remote serviceability. So 95% of our pumps will be able to be serviced that way. It's also, we have the standard platform between the LVP and syringe, which we didn't offer. *We have the most advanced safety features in the largest drug library out there, which, again any changes to the drug library can be applied wirelessly as well. That those are a lot of the features that resonate. Again, we also talk about, we look at it just overall just the value and quality proposition that we provide to the hospitals as well across the portfolio.*

I think *the launch of Novum gives us confidence in achieving above market growth for the next couple of years*.

64. On November 8, 2024, the Company hosted an earnings call for the third quarter of 2024 (the "Q3 2024 Call"). During the Q3 2024 Call, Defendant Almeida assured investors that Novum's launch was proceeding smoothly and driving significant market share gains, stating:

*I think your question about the Novum update is that is going extremely well*. The market share growth, we usually in the past, used to gain about 1% market share every year just by rule of thumb. We are seeing 2% to 2.5% by the end of this year. And we're going to continue to accelerate that. The acceptance of the pump has been significant. *And we're very happy how the team has launched the product. It's one of the best launches that I've seen in my career.*

21

65.     On November 12, 2024, the Company filed with the SEC a Form 10-Q reporting the Company's financial and operational results for the third quarter of 2024 (the "Q3 2024 10-Q"). The Q3 2024 10-Q was signed by Defendant Grade and included certifications signed by Defendant Almeida and Defendant Grade pursuant to Section 906 of the SOX Act. In the Q3 2024 10-Q, the Company stated that "we do not believe that there have been any material changes to the risk factors previously disclosed in our [2023 10-K]." The 2023 10-K contained substantially the same risk factors identified in ¶ 31, *supra*.

66.     On November 18, 2024, at the Stifel Healthcare Conference, Defendant Grade highlighted Novum as central to Baxter's Medical Products and Therapies business and a driver of growth, explaining:

> So if I look across our businesses, **starting with MPT, clearly, our Novum pump has become one of the key focus areas of that business, and one of our key growth drivers.**
>
> This year, our pump growth has been close to 50%, both from a Novum perspective, obviously, as well as our Spectrum pumps. **And the pumps themselves, been both, from – goes - the LVP pump, the syringe pump. Again, in all cases, we're having some very strong growth. So, that's a strong innovation in that business.**

67.     On November 20, 2024, at the Jefferies London Healthcare Conference, Defendant Grade again assured investors that Novum's U.S. launch had been smooth because the Company had already identified and resolved problems during the Canadian rollout, stating:

> I mean, I think our pump business in general has been strong including, in fact, even pre-Novum. From a Spectrum standpoint, we're taking a point a year of share. And **then, now that Novum's actually been introduced again with a feature set that's been really well received and a rollout process that's actually gone really well. In fact, again, I think one of the underappreciated pieces of that. We had that rollout in Canada for a while before we actually rolled it in the US. And so, there's a lot of opportunity to just work out any last kind of bugs and kinks in a way that's actually, had a really, again, a really smooth and impactful rollout of Novum here in the US.**

22

And so, that has resulted in us being in a place where we -- the one point of share we're taking in Spectrum has translated into a couple of points of share in the year with Novum. We've got a number of really nice successes, both in terms of replacements with our existing customers as well as competitive wins. And s*o, we anticipate that trajectory continuing into next year. And I would say, probably even through the end of 2026, we expect a really solid replacement cycle in that space*.

We also have introduced there a syringe pump. And obviously, that's new for us. But we actually have taken some nice share gains in that space as well, again, on a small base, because, again, it's a new introduction. But that's another area we've had some success and expect to continue to do. And s*o, again, that is a key driver from a growth standpoint for us next year and particularly obviously in our MPT segment*.

68.     On February 20, 2025, the Company hosted an earnings call for the fourth quarter of 2024 and fiscal year 2024 (the "Q4 2024 Call").  During the Q4 2024 Call, Defendant Grade praised Novum as a "resounding success" and a key driver of Baxter's growth, noting:

So, really, let me start with the fact that it's really across our portfolio where we actually have, again, really some innovation happening. And again, certainly, I would start with [ Heather's business and FPC ]. Obviously*, the Novum pump has been a resounding success. It's a differentiated product that, again, has gotten a great customer response. The launch has gone extremely well*. Obviously, we got a partial year of that growth last year in 2024. We'll have a full year of that growth heading forward here in 2025.

So, certainly *Novum is obviously a huge key part of our innovation and again really a great success story*.

69.     On the same Q4 2024 Call, Defendant Knight expressed strong enthusiasm for Novum, telling investors that the Company was "very happy with the launch" and "seeing it pay off," stating:

So, *we did see strengths across our infusion therapies business and the infusion pump platform* in particular in the fourth quarter.

*So, I'll say we're very happy with the launch of Novum IQ and where we are. The teams are doing a great job driving this new platform. If you recall, Baxter placed a pretty big bet to internally develop a brand-new-to-market and novel infusion pump platform, both with the hardware, software and digital platform, and we're seeing it pay off.*

23

So, our infusion business grew 50% last year in 2024. And we're expecting another great year this year in 2025. And it's not only important, because we get the revenue from the hardware and software, but also because we get to pull through very consistent revenue over the life of that pump. So, share cap, share competitive gains are really important, *and customer satisfaction, right now, is very high*, both on the implementation of the pump as well as the EMR integration with the new platform. And this was developed in collaboration with our customers.

So, again, we're starting to see the benefit of that. We took multiple points of market share last year in 2024 and we're expecting to see more of the same, more competitive gains in 2025. And then, we have some new complementary digital suites that are now launching that will be a great complement to this launch mid-year in 2024.

So, I'll tell you, *I'm pretty excited about where we are in this new chapter, the new pace, momentum that we're building around the Novum platform*.

70. The next day, the Company filed with the SEC a Form 10-K reporting the Company's financial and operational results for the year ended December 31, 2024 (the "2024 10-K"). The 2024 10-K was signed by Defendant Almeida, Defendant Grade, as well as other members of Baxter's Board of Directors, and included certifications signed by Defendant Almeida and Defendant Grade pursuant to Section 906 of the SOX Act. The 2024 10-K contained substantially the same risk factors as those identified in ¶ 31, *supra*, with the following additional statement: "In addition, our customers' use of third parties to service or repair our products has caused, and may in the future cause, quality or safety issues, including due to such third parties' lack of knowledge of or training on our products."

71. On March 5, 2025, at the TD Cowen Conference, Defendant Grade once again described the Novum launch as successful and widely accepted, stating:

> *I think that the launch itself is something as a company, we're really proud of, and it has actually gone really well. And the product has been extremely well received*. The demand level is high. We're certainly in a replacement cycle for pumps. And so there's a lot of people selling pumps right now, and we're certainly one of them participating in that. We expect that replacement cycle to continue here for the next year, year and a half to 2 years.

24

But I think the key part, back to your original ask, is this is something that as we sold our Spectrum pumps, we were taking share at a rate of about 1 point a year. We actually believe now that, with Novum, we've actually doubled that, Or we're taking a couple of points of share a year here. And the great thing for us is we got about a half a year out of that growth last year, and obviously, we'll now get a full year of it here in 2025.

***So feel good about that momentum. And then, of course, the good news of that is the pumps themselves are not necessarily margin accretive by themselves, but the sets and the other things that go with that is - has been something we've seen a lot of success in as well, and feeling really good about where we stand there***.

72. The statements in ¶¶ 29-71 were materially false and misleading when made because they failed to disclose that: (a) the Novum LVP suffered systemic defects that caused widespread malfunctions, including underinfusion, overinfusion, and complete non-delivery of fluids, which exposed patients to risks of serious injury or death; (b) Baxter was notified of multiple device malfunctions, injuries, and deaths from these defects; (c) Baxter's attempts to address these defects through customer alerts were inadequate remedial measures, when design flaws persisted and continued to cause serious harm to patients; (d) as a result, there was a heightened risk that customers would be instructed to take existing Novum LVPs out of service and that Baxter would completely pause all new sales of these pumps; and (e) based on the foregoing, Baxter's statements about the safety, efficacy, product rollout, customer feedback and sales prospects of the Novum LVPs were materially false and misleading.

**C. Safety Concerns Surface While Baxter Continues to Mislead Investors**

73. Safety concerns regarding Novum LVP began to surface on April 7, 2025, after a Missouri news outlet reported that a whistleblower at BJC Health System ("BJC"), a major hospital system based in St. Louis, had raised serious safety concerns about inaccurate infusion rates with the Novum LVP. The whistleblower stated that "patients should not be being treated with these pumps. These pumps are not safe." The whistleblower claimed that within days of implementing the Novum LVP devices in BJC facilities, staff started seeing and reporting major malfunctions.

When asked if any potential fixes to the safety issues had been sufficient, the whistleblower replied, "no, they have all been Band-Aid solutions." This report prompted BJC to take all of its Novum LVPs out of service. Despite this whistleblower report, Baxter declined to respond to multiple requests for comment and continued to portray the Novum LVP as a safe product with a successful launch. Because major national news outlets did not cover the story, Baxter was able to limit its fallout and continue misleading investors about the purported success of the Novum LVP rollout.

74. On April 24, 2025, just weeks after the whistleblower report, Baxter sent customers a warning letter (the "April 2025 Letter") about an underinfusion risk associated with the Novum LVP, disclosing only one serious injury linked to this issue. The April 2025 Letter claimed that "customers can continue to use the Novum IQ LVP" and the Company was "developing a software update" to resolve the issue. The April 2025 Letter also directed customers to "monitor patients frequently to ensure that the appropriate infusion is being delivered."

75. Despite these safety concerns, the Company continued to publicly tout its successful rollout of the Novum LVP. On May 1, 2025, the Company hosted an earnings call for the first quarter of 2025 (the "Q1 2025 Call"). On the Q1 2025 Call, Defendant Knight emphasized Novum's strong market performance and customer enthusiasm, stating:

> I'll tackle the first one, first question on Novum. So, the backlog and pipeline on Novum is strong. So yes, we have taken market share in the low single-digit range already. So there's good momentum in the Novum franchise. Not just for the launch, Novum has been in the market now less than a year, but also the innovation pipeline coming behind it. It's pretty robust and rich. ***So we're excited and our customers are excited about partnering with us around Novum.***
>
> ***A lot of the pumps in the market have been a decade plus old. So, we're bringing new technology to the market with smarter, more sophisticated capabilities on interoperability with digital suites that are going to follow to supplement that launch. So good momentum around Novum and happy with the progress.***

76.     On May 6, 2025, the Company filed with the SEC a Form 10-Q reporting the Company's financial and operational results for the first quarter of 2024 (the "Q1 2025 10-Q"). The Q1 2025 10-Q was signed by Defendant Grade and included certifications signed by Defendant Shafer and Defendant Grade pursuant to Section 906 of the SOX Act.  In the Q1 2025 10-Q, the Company stated that "we do not believe that there have been any material changes to the risk factors previously disclosed in our [2024 10-K]."  The 2024 10-K contained substantially the same risk factors identified in ¶¶ 31 and 70, *supra*.

77.     On June 6, 2025, the FDA issued a recall (the "June 2025 Recall") disclosing contents from the April 2025 Letter.  The FDA explained that, according to Baxter, if the pump is left in standby mode for more than 2 hours and 30 minutes or powered off with the infusion set still loaded, the pump could deliver less medication than intended.  The FDA stated that, under worst-case conditions, this defect could result in up to 50 percent underinfusion, which could lead to serious injury or death, particularly in vulnerable populations such as infants.  The FDA noted that Baxter had reported one serious injury associated with this issue.  The FDA reported that Baxter was updating the device's instructions for use to address the underinfusion risk and was instructing customers to continue "monitor[ing] patients frequently to ensure that the appropriate infusion is being delivered."

78.     During a Goldman Sachs conference on June 10, 2025, four days after the June 2025 Recall, Baxter assured investors that the Novum LVP launch was going smoothly and that the product was performing well.  Defendant Grade stated, "c*ertainly continued progress from Novum*. We've had strong growth in our pump sales, and so that continues to be a drive." Defendant Grade further claimed that, "*from a Novum perspective, we certainly – again, that*

27

*launch has gone really well.  The product is performing really well*. We are in an upgrade cycle that is causing lots of customers to be able to have conversations about those things."

79.     On July 14, 2025, just weeks after Defendants assured investors that the Novum LVP launch was going "really well" and that the product was "performing really well," Baxter issued a second warning letter (the "July 2025 Letter") to customers reiterating the underinfusion risks and adding the risk of overinfusion with the Novum LVP.  The July 2025 Letter specifically warned of: (i) underinfusion that could occur when increasing flow rates from a low baseline to a high second rate, including scenarios where no fluid is delivered; and (ii) overinfusion, underinfusion, or complete non-delivery caused by misloading of the infusion set into the pump. In the July 2025 Letter, Baxter admitted that, from June 2023 through May 2025, it had received 79 reports of serious injury and two deaths related to these issues.  Despite the severity of these hazards, Baxter did not instruct hospitals to remove the pumps from service but instead allowed continued use while directing hospitals to follow mitigation steps.  Baxter also stated it was developing software and hardware modifications to correct these problems and would provide updates when available.

80.     On July 22, 2025, the FDA issued a second recall (the "July 2025 Recall") based on information from the July 2025 Letter.  This second recall notice explained that the Novum LVP could cause underinfusion when transitioning from a low flow rate to a substantially higher rate, and could also cause overinfusion, underinfusion, or complete non-delivery.  In addition, the July 2025 Recall reiterated that Baxter had received 79 reports of serious injury and two reports of patient deaths associated with these issues.

81.     The statements in ¶¶ 74-76 and 78-79 were materially false and misleading when made because they failed to disclose that: (a) the Novum LVP suffered systemic defects that caused

widespread malfunctions, including underinfusion, overinfusion, and complete non-delivery of fluids, which exposed patients to risks of serious injury or death; (b) Baxter was notified of multiple device malfunctions, injuries, and deaths from these defects; (c) Baxter's attempts to address these defects through customer alerts were inadequate remedial measures, when design flaws persisted and continued to cause serious harm to patients; (d) as a result, there was a heightened risk that customers would be instructed to take existing Novum LVPs out of service and that Baxter would completely pause all new sales of these pumps; and (e) based on the foregoing, Baxter's statements about the safety, efficacy, product rollout, customer feedback and sales prospects of the Novum LVPs were materially false and misleading.

## D. The Truth Is Fully Revealed

82. Defendants' fraud was fully revealed on July 31, 2025, when Baxter announced that it had decided to "***voluntarily and temporarily pause shipments and planned installations of the Novum LVP***" and that the Company was "unable to currently commit to an exact timing for resuming shipment and installation for Novum IQ LVPs." Defendants stated that they had offered "customers the option of our Spectrum infusion pump as an alternative" and that the Company's low-end guidance assumes that the Company does not resume shipments for Novum LVPs before the end of the year.

83. In reaction, analysts were surprised to learn about the sales pause. For example, analysts at Wells Fargo stated that "while we have seen the recent FDA alert relating to under-infusion risk associated w/ Novum, ***the sales pause came as a surprise***." Moreover, analysts at JPMorgan found it "disappointing to see Baxter taking two steps back" and that "***it's hard not to be disappointed***" as the Company's "***voluntary recall of Novum make[s] it even more difficult to underwrite management's previously stated revenue growth targets***."

29

84. On this news, Baxter stock plummeted *22.4 percent*, closing at $21.76 per share on July 31, 2025.

85. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's stock, Plaintiff and other Class members have suffered significant losses and damages.

## III. ADDITIONAL SCIENTER ALLEGATIONS

86. During the Class Period, as alleged herein, the Individual Defendants acted with scienter in that the Individual Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

87. The Individual Defendants permitted Baxter to release these false and misleading statements and failed to file the necessary corrective disclosures, which artificially inflated the value of the Company's securities.

88. As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Baxter, their control over, receipt, or modification of Baxter's allegedly materially misleading statements and omissions, or their positions with the Company that made them privy to confidential information concerning Baxter, participated in the fraudulent scheme alleged herein.

89. The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Baxter common stock by disseminating materially false and misleading statements or concealing material adverse facts. The

30

scheme deceived the investing public regarding Baxter's business, operations, and management and the intrinsic value of Baxter stock and caused Plaintiff and members of the Class to purchase Baxter stock at artificially inflated prices.

## IV. LOSS CAUSATION/ECONOMIC LOSS

90. During the Class Period, as detailed herein, Baxter and the Individual Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Baxter stock and operated as a fraud or deceit on Class Period purchasers of Baxter stock by misrepresenting the Company's business and prospects. Later, when Defendants' prior misrepresentations and fraudulent conduct became known to the market, the price of Baxter stock declined as the prior artificial inflation came out of the price over time. As a result of their purchases of Baxter stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, i.e., damages, under the federal securities laws.

### A. Applicability of Presumption of Reliance: Fraud on the Market

91. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) the omissions and misrepresentations were material;

(c) the Company's securities traded in an efficient market;

(d) the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(e) Plaintiff and other members of the Class purchased Baxter stock between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

92.     At all relevant times, the markets for Baxter stock was efficient for the following reasons, among others:

       (a)     as a regulated issuer, Baxter filed periodic public reports with the SEC;

       (b)     Baxter regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major newswire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

       (c)     Baxter was followed by numerous securities analysts employed by a major brokerage firm(s) who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s) and that were publicly available and entered the public marketplace; and

       (d)     Baxter stock was actively traded in an efficient market, including its common stock that was traded on the NYSE under the ticker symbol "BAX."

93.     As a result of the foregoing, the market for Baxter stock promptly digested current information regarding Baxter from publicly available sources and reflected such information in Baxter's stock prices.  Under these circumstances, all purchasers of Baxter stock during the Class Period suffered similar injury through their purchase of Baxter stock at artificially inflated prices and the presumption of reliance applies.

94.     Further, to the extent that the Defendants concealed or improperly failed to disclose material facts with regard to the Company, Plaintiff and the Class are entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972).

**B. No Safe Harbor**

95. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, or the forward-looking statement was authorized or approved by an executive officer of Baxter who knew that the statement was false when made.

## V. CLASS ACTION ALLEGATIONS

(a) Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Baxter common stock during the Class Period and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

96. The members of the Class are so numerous that joinder is impracticable. Baxter common stock is actively traded on the New York Stock Exchange. While the exact number of

33

Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes there are hundreds, if not thousands, of members in the Class.  Record owners and other Class members may be identified from records procured from or maintained by the Company or its transfer agent and may be notified of the pendency of this action using a form of notice similar to that customarily used in securities class actions.

97.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

98.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

99.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including:

    (a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

    (b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Baxter;

    (c)     whether the Individual Defendants caused Baxter to issue false and misleading financial statements during the Class Period;

    (d)     whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

>     (e)     whether the prices of Baxter common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

>     (f)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

100.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it exceedingly difficult, if not impossible and impracticable, for Class members to individually redress the wrongs alleged. There will be no difficulty in managing this action as a class action.

## COUNT I

### For Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Against Baxter and the Individual Defendants

101.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

102.     During the Class Period, the Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

103.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

>     (a)     Employed devices, schemes, and artifices to defraud;

>     (b)     Made untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

35

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Baxter stock during the Class Period.

104.    Plaintiff and Class members have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Baxter stock.  Plaintiff and Class members would not have purchased Baxter stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

105.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Baxter stock during the Class Period.

## COUNT II

### For Violation of Section 20(a) of the Exchange Act Against the Individual Defendants

106.    Plaintiff repeats and realleges the allegations contained in ¶¶ 1-100 as if fully set forth herein.

107.    The Individual Defendants acted as controlling persons of Baxter within the meaning of Section 20(a) of the Exchange Act by virtue of their positions and their power to control the actions of Baxter and its employees.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully prays for judgment against defendants as follows:

36

(A)     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(B)     Awarding Plaintiff and the Class compensatory damages against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, together with pre-judgment interest thereon;

(C)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including, but not limited to, attorneys' fees and costs incurred by consulting and testifying expert witnesses; and

(D)     Granting such other, further, and/or different relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: October 16, 2025

**COHEN MILSTEIN SELLERS & TOLL PLLC**

*/s/ Carol V. Gilden*
Carol V. Gilden (Bar No. 6185530)
200 S. Wacker Drive, Suite 2375
Chicago, IL 60606
Tel.: (312) 629-3737
Fax: (312) 357-0369
cgilden@cohenmilstein.com

**COHEN MILSTEIN SELLERS & TOLL, PLLC**
Steven J. Toll
1100 New York Avenue, NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
stoll@cohenmilstein.com

*Liaison Counsel for Plaintiff*

**LABATON KELLER SUCHAROW LLP**
Francis P. McConville (*pro hac forthcoming)*
Connor C. Boehme (*pro hac forthcoming)*
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
fmcconville@labaton.com
cboehme@labaton.com

*Counsel for Plaintiff*

38

## CERTIFICATION

I, Michael P. Donovan, as Administrator of Electrical Workers Pension Fund, Local 103, I.B.E.W. ("Local 103"), hereby certify as follows:

1.      I am fully authorized to enter into and execute this Certification on behalf of Local 103. I have reviewed a complaint prepared against Baxter International Inc. ("Baxter") alleging violations of the federal securities laws, and authorize the filing of this pleading;

2.      Local 103 did not purchase Baxter common stock at the direction of counsel or in order to participate in any private action under the federal securities laws;

3.      Local 103 is willing to serve as a lead plaintiff and representative party in this matter, including providing testimony at deposition and trial, if necessary. Local 103 fully understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the Class;

4.      Local 103's transactions in Baxter common stock during the Class Period are reflected in Exhibit A, attached hereto;

5.      Local 103 sought to serve as a lead plaintiff or representative party in the following class action filed under the federal securities laws during the last three years:

*Electrical Workers Pension Fund, Local 103, I.B.E.W. v. DoubleVerify Holdings, Inc.,*
No. 1:25-cv-4332 (S.D.N.Y.)

6.      Beyond its pro rata share of any recovery, Local 103 will not accept payment for serving as a lead plaintiff and representative party on behalf of the Class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this *19* day of September, 2025.

Michael P. Donovan
Administrator
Electrical Workers Pension Fund, Local 103,
I.B.E.W.

2

**EXHIBIT A**

**TRANSACTIONS IN BAXTER INTERNATIONAL, INC. COMMON STOCK**

| Transaction Type | Trade Date | Shares | Share Price | Cost/Proceeds |
|---|---|---|---|---|
| Purchases | 07/03/24 | 400 | $32.8487 | ($13,139) |
| Purchases | 07/05/24 | 900 | $32.9217 | ($29,630) |
| Purchases | 07/08/24 | 1,200 | $33.6701 | ($40,404) |
| Purchases | 07/09/24 | 1,200 | $33.7108 | ($40,453) |
| Purchases | 07/10/24 | 100 | $33.7977 | ($3,380) |
| Purchases | 07/11/24 | 1,200 | $35.2432 | ($42,292) |
| Purchases | 07/12/24 | 800 | $35.3715 | ($28,297) |
| Purchases | 07/15/24 | 800 | $34.0959 | ($27,277) |
| Purchases | 07/16/24 | 2,400 | $35.1141 | ($84,274) |
| Purchases | 07/17/24 | 2,500 | $35.8165 | ($89,541) |
| Purchases | 07/18/24 | 400 | $36.0170 | ($14,407) |
| Purchases | 07/19/24 | 1,100 | $35.3020 | ($38,832) |
| Purchases | 07/22/24 | 1,500 | $35.3266 | ($52,990) |
| Purchases | 07/23/24 | 1,500 | $35.2793 | ($52,919) |
| Purchases | 07/24/24 | 300 | $35.2494 | ($10,575) |
| Purchases | 07/25/24 | 1,100 | $35.5438 | ($39,098) |
| Purchases | 07/26/24 | 600 | $35.6788 | ($21,407) |
| Purchases | 07/29/24 | 1,900 | $35.9508 | ($68,307) |

3