# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CITY OF HALLANDALE BEACH POLICE OFFICERS' AND FIREFIGHTERS' PERSONNEL RETIREMENT TRUST, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BAXTER INTERNATIONAL, INC., JOSÉ E. ALMEIDA, BRENT SHAFER, JOEL T. GRADE, JAMES K. SACCARO, BRIAN STEVENS, HEATHER KNIGHT, and CLARE TRACHTMAN,<br><br>Defendants. | Case No. 25-cv-14712<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff City of Hallandale Beach Police Officers' and Firefighters' Personnel Retirement Trust ("Hallandale Beach" or "Plaintiff"), alleges the following based upon personal knowledge as to itself and its own acts, and upon information and belief as to all other matters, including the investigation of Plaintiff's counsel, which included, among other things, a review of Defendants' (defined below) United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by Baxter International, Inc. ("Baxter" or the "Company"), analyst reports and advisories about the Company, media reports concerning the Company, and information obtainable on the internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION AND OVERVIEW

1.    This securities class action is brought on behalf of all persons or entities that purchased or otherwise acquired Baxter common stock between February 23, 2022, through October 29, 2025, inclusive (the "Class Period").  The claims asserted herein are alleged against Baxter and certain of the Company's current and former senior executives (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

2.    Based in Deerfield, Illinois, Baxter develops, manufactures, and markets medical products and devices.  One of the Company's flagship products is the Novum IQ Large Volume Pump ("Novum LVP"), a device used for controlled delivery of intravenous ("IV") fluids.

3.    In November of 2020, the Novum LVP was cleared for sale in Canada, and Baxter began a nation-wide rollout to Canadian customers.  During the rollout, Defendants repeatedly stated that they had the positive customer feedback on the Novum LVP from Canadian customers, stating "our customers in Canada are already enjoying this platform today, and we're getting great feedback."

4.    Although customers in Canada reported that the Novum LVP had software issues that resulted in insufficient or excessive IV therapy or the interruption of IV therapy entirely, Defendants assured investors that the Company ironed out the technological issues that the Novum LVP faced during its roll-out in Canada.

5.    In April 2024, Baxter expanded Novum LVP sales into the United States after receiving approval from the Food and Drug Administration ("FDA").  Prior to launching the Novum LVP in the United States, Defendants again assured investors that Baxter had "address[ed] all of [the] issues" from its launch in Canada and that the United States launch.

6.      Throughout the Class Period, the Company also stated that the Novum LVP "has some of the most advanced safety features that are available" and touted the device's "precision." Baxter executives also repeatedly boasted about the positive customer feedback, both in Canada and the United States, that the Company received on the Novum LVP.

7.      In truth, the Novum LVP lacked precision and was not well received by customers. To the contrary, the device was susceptible to chronic under-infusion and over-infusion, putting patients at risk.  Further, unknown to investors, during the Class Period, Baxter received at least 79 customer reports of serious injury and two reports of deaths related to the Novum LVP.  As a result of Defendants' misrepresentations, Baxter shares traded at artificially inflated prices throughout the Class Period.

8.      Suspicions about the safety of the Novum LVP began to arise on April 7, 2025, when a Missouri news outlet reported that a whistleblower at a major hospital system based in St. Louis had raised serious safety concerns about inaccurate infusion rates with the Novum LVP. However, this report did not reach a national audience.

9.      Weeks later, on April 24, 2025, Baxter sent customers a notice warning about the risk of under-infusion associated with the Novum LVP.  At the time, the Company only disclosed one serious injury linked to this issue and claimed that "customers can continue to use the Novum IQ LVP" and that it was "developing a software update" to resolve the issue.  However, this letter was not public, as Baxter only sent this letter to affected customers.

10.     On May 20, 2025, however, the FDA issued a Class 1 Voluntary Recall on the Novum LVP due to software issues that caused the potential for under-infusion following use of the "standby mode" feature or if the device is powered off with the set loaded.  These disclosures caused the Company's stock price to decline by $1.03 per share, or 3.3%.

11. Soon after, on June 6, 2025, the FDA announced that Baxter was providing customers with updated instructions for the Novum LVP and, for the first time, made public Baxter's April 24, 2025 customer notice.

12. On July 14, 2025, Baxter issued an "Urgent Medical Device Correction" to affected customers reiterating the Novum LVP under-infusion risks and flagging an additional risk of over-infusion. In this "Urgent Medical Device Correction," Baxter also finally admitted that from June 2023 through May 2025 it had received approximately 79 reports of serious injury, and two reports of patient deaths related to these issues.

13. On July 22, 2025, the FDA issued a second recall based on the risks of over-infusion and noted that on July 14, 2025, Baxter issued the "Urgent Medical Device Correction" to affected customers. The FDA also acknowledged that as of June 27, 2025, Baxter has reported 79 serious injuries, and two deaths associated with the Novum LVP's issues.

14. On July 31, 2025, Baxter revealed that it had decided to "voluntarily and temporarily pause shipments and planned installations of the Novum LVP." Defendant Knight described this as "a decision we made a couple of weeks ago" that had been "communicated to [Baxter] customers," yet this was the very first time that Baxter revealed this information to investors. As a result of these disclosures, Baxter's stock price declined by an additional $6.29 per share, or 22.4%.

15. Then, on October 30, 2025, Baxter revealed that its third quarter top line revenue came in lower than its previously issued guidance, in part, due to lower infusion pump sales because of the shipment and installation hold of the Novum LVP. Critically, Defendant Grade revealed that the hold would continue to be in place for the foreseeable future, stating that "[f]rom a timing standpoint, again, at this point, we're unable to commit to specific timing around the

shipment and install for Novum LVP. We do anticipate this though being in place beyond 2025." Defendant Grade also revealed that the Company was losing customers as "the timing and nature of the resolution of the Novum LVP hold is leading some customers to evaluate alternative solutions." In addition, the Company announced that it intends to reduce the quarterly dividend to $0.01 per share, from its previous $0.17 per share, beginning with the dividend to be paid in January 2026. As a result of these disclosures, Baxter's stock price declined by an additional $3.26 per share, or 14.5%.

16. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other members of the Class have suffered significant damages.

## II. JURISDICTION AND VENUE

17. The claims asserted in this Complaint arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

18. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

19. Venue is proper in this Judicial District under 28 U.S.C. § 1391(b), Section 27 of the Exchange Act, 15 U.S.C. § 78aa(c). Many of the acts alleged herein, including the preparation and dissemination of materially false and misleading statements, occurred in substantial part in this District. Additionally, Baxter's principal place of business is located in this District.

20. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the mails, interstate telephone communications, and the facilities of a national securities exchange.

### III.    **PARTIES**

21.    Plaintiff Hallandale Beach is a pension system providing retirement benefits to public employees of the City of Hallandale Beach, Florida.  As indicated in the certification submitted herewith, Plaintiff purchased shares of Baxter common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

22.    Defendant Baxter is a Delaware corporation with its principal place of business located in Deerfield, Illinois.  Baxter's common stock trades on the NYSE under the ticker symbol "BAX."

23.    Defendant José E. Almeida ("Almeida") served as Baxter's Chief Executive Officer, President, and Chair of the Board of Directors until February 2025, when he retired from his role effective immediately.

24.    Defendant Brent Shafer ("Shafer") was appointed as Baxter's Interim Chief Executive Officer and Chair of the Board of Directors from February 2025 until August 2025.

25.    Defendant Joel T. Grade ("Grade") has served as Baxter's Chief Financial Officer since October 2023.

26.    Defendant James K. Saccaro ("Saccaro") served as Baxter's Chief Financial Officer until May 2023.

27.    Defendant Brian Stevens ("Stevens") served as Baxter's Interim Chief Financial Officer from May 2023 until October 2023 and has served as Baxter's Senior Vice President, Chief Accounting Officer and Controller at all other relevant times.

28.    Defendant Heather Knight ("Knight") served as Baxter's Chief Operating Officer from February 2025 through October 29, 2025.

29.     Defendant Clare Trachtman ("Trachtman") was Baxter's Vice President of Investor Relations at all relevant times.

30.     Defendants Almeida, Shafer, Grade, Stevens, Saccaro, Knight, and Trachtman are referred to herein as the "Individual Defendants."

31.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Baxter's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and/or were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

32.     Baxter and the Individual Defendants are collectively referred to herein as "Defendants."

## IV.     BACKGROUND

33.     Baxter develops, manufactures, and markets medical products and devices, including one of its flagship products, the Novum LVP.  The Novum LVP is a device used for controlled delivery of IV fluids.  In late 2020, Baxter began selling the Novum LVP in Canada.  Then, in April 2024, Baxter expanded Novum LVP sales into the United States after receiving approval from the Food and Drug Administration ("FDA").

34.     Throughout the Class Period, the Company repeatedly touted the Novum LVP's advanced technology and precision.  Baxter executives also repeatedly boasted about the positive

customer feedback that the Company received on the Novum LVP. In reality, and unknown to investors, the Novum LVP was, and always had been, plagued with technological issues that were causing serious harm to patients receiving IV fluids from the device, making Defendants' statements false and misleading.

**V.  DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS CAUSE SUBSTANTIAL LOSSES TO INVESTORS**

35.  The Class Period begins on February 23, 2022, when Baxter filed with the SEC its Form 10-K for the year ended December 31, 2021 (the "2021 Form 10-K"). The 2021 Form 10-K was signed by Defendants Almeida, Saccaro, and Stevens, and contained certifications by Defendants Almeida and Saccaro that attested to the purported accuracy and completeness of the 2021 Form 10-K. In the 2021 Form 10-K, the Company purported to warn that its "success also depends on our ability to maintain and routinely improve product quality and our quality management program." The Company also purported to warn that "[a]n inability to address a quality or safety issue in an effective and timely manner may also cause negative publicity, a loss of customer confidence in us or our current or future products, which may result in the loss of sales and difficulty in successfully launching new products."

36.  That same day, Defendant Saccaro represented Baxter during the Citi Research Healthcare Conference. During that conference, Defendant Saccaro touted the Novum LVP's safety profile, stating, "[t]he reason the pump is exciting is it really leverages all of the best things that we have with our pump, including the Master Drug Library, the medication safety provisions that we have with respect to it, a simple and easy user interface."

37.  On April 28, 2022, Baxter filed with the SEC its Form 10-Q for the first quarter of 2022. The Form 10-Q was signed by Defendant Saccaro and contained certifications by Defendants Almeida and Saccaro that attested to the purported accuracy and completeness of the

Form 10-Q. Referring back to the purported risk disclosures in the 2021 Form 10-K (¶ 35), the Form 10-Q stated that "[w]e do not believe that there have been any material changes to the risk factors previously disclosed in our [2021 Form 10-K]."

38. That same day, Baxter held a conference call with analysts and investors to discuss its financial results for the first quarter of 2022. During the call, Defendant Almeida boasted about the Novum LVP's superior technology, stating that "while we can't speak for FDA or the eventual outcome of their review process, we are confident in our leading-edge Novum IQ technology."

39. On May 25, 2022, Baxter hosted its 2022 Investor Conference. During this conference, Defendant Knight discussed the positive customer response to the Novum LVP in Canada, stating, "our customers in Canada are already enjoying this platform today, and we're getting great feedback."

40. On July 28, 2022, Baxter filed with the SEC its Form 10-Q for the second quarter of 2022. The Form 10-Q was signed by Defendant Saccaro and contained certifications by Defendants Almeida and Saccaro that attested to the purported accuracy and completeness of the Form 10-Q. Referring back to the purported risk disclosures in the 2021 Form 10-K (¶ 35), the Form 10-Q stated that "[w]e do not believe that there have been any material changes to the risk factors previously disclosed in our [2021 Form 10-K]."

41. On October 27, 2022, Baxter filed with the SEC its Form 10-Q for the third quarter of 2022. The Form 10-Q was signed by Defendant Saccaro and contained certifications by Defendants Almeida and Saccaro that attested to the purported accuracy and completeness of the Form 10-Q. Referring back to the purported risk disclosures in the 2021 Form 10-K (¶ 35), the Form 10-Q stated that "[w]e do not believe that there have been any material changes to the risk factors previously disclosed in our [2021 Form 10-K]."

9

42. On February 9, 2023, Baxter held an earnings call with analysts and investors to discuss the Company's fiscal fourth quarter and full year 2022 results. During this earnings call, Defendant Almeida discussed the Novum LVP's successful roll-out in Canada, stating, "we're saying that we're enthusiastic because we know the products are doing very well in Canada."

43. On the same day, Baxter filed with the SEC its Form 10-K for the year ended December 31, 2022 (the "2022 Form 10-K"). The 2022 Form 10-K was signed by Defendants Almeida, Saccaro, and Stevens and contained certifications by Defendants Almeida and Saccaro that attested to the purported accuracy and completeness of the 2022 Form 10-K. In the 2022 Form 10-K, the Company purported to warn that its "success also depends on our ability to maintain and routinely improve product quality and our quality management program." The Company also purported to warn that "[a]n inability to address a quality or safety issue in an effective and timely manner may also cause negative publicity, a loss of customer confidence in us or our current or future products, which may result in the loss of sales and difficulty in successfully launching new products."

44. On April 27, 2023, Baxter filed with the SEC its Form 10-Q for the first quarter of 2023. The Form 10-Q was signed by Defendant Saccaro and contained certifications by Defendants Almeida and Saccaro that attested to the purported accuracy and completeness of the Form 10-Q. Referring back to the purported risk disclosures in the 2022 Form 10-K (¶ 43), the Form 10-Q stated that "[w]e do not believe that there have been any material changes to the risk factors previously disclosed in our [2022 Form 10-K]."

45. On July 27, 2023, Baxter held an earnings call with analysts and investors to discuss the Company's fiscal second quarter 2023 financial results. During the call, Defendant Almeida discussed updates to the Novum LVP software based on issues in the Canadian roll-out and assured

10

investors that "[Baxter has] a very good pump platform" and that the Company wants "to make sure that the best and most recent updates to the product are implemented" before its launch in the United States.

46.     On the same day, Baxter filed with the SEC its Form 10-Q for the second quarter of 2023. The Form 10-Q was signed by Defendant Stevens and contained certifications by Defendants Almeida and Stevens that attested to the purported accuracy and completeness of the Form 10-Q. Referring back to the purported risk disclosures in the 2022 Form 10-K (¶ 43), the Form 10-Q stated that "[w]e do not believe that there have been any material changes to the risk factors previously disclosed in our [2022 Form 10-K]."

47.     On September 7, 2023, Defendant Almeida represented the Company at the Wells Fargo Securities Healthcare Conference. During the conference, Defendant Almeida touted the effective technology of the Novum LVP, stating, "It's a great pump, works today. It's working on the market today."

48.     During the same conference, Defendant Almeida also praised the Novum LVP's precision, stating, "[Baxter] put more resources than you can imagine to make sure that this product is absolutely what needs to go into the US market. It is a product that has good precision, better than some products on market today in the US and has also a very good interface with the rest of hospital systems."

49.     On November 2, 2023, Baxter filed with the SEC its Form 10-Q for the third quarter of 2023. The Form 10-Q was signed by Defendant Grade and contained certifications by Defendants Almeida and Grade that attested to the purported accuracy and completeness of the Form 10-Q. Referring back to the purported risk disclosures in the 2022 Form 10-K (¶ 43), the

11

Form 10-Q stated that "[w]e do not believe that there have been any material changes to the risk factors previously disclosed in our [2022 Form 10-K]."

50.     On February 8, 2024, Baxter filed with the SEC its Form 10-K for the year ended December 31, 2023 (the "2023 Form 10-K").  The 2023 Form 10-K was signed by Defendants Almeida, Grade, Stevens, and Shafer, and contained certifications by Defendants Almeida and Grade that attested to the purported accuracy and completeness of the 2023 Form 10-K.  In the 2023 Form 10-K, the Company purported to warn that its "success also depends on our ability to maintain and routinely improve product quality and our quality management program."  The Company also purported to warn that "[a]n inability to address a quality or safety issue in an effective and timely manner may also cause negative publicity, potentially leading to a loss of customer confidence in us or our current or future products, which may result in the loss of sales and difficulty in successfully launching new products."

51.     On February 29, 2024, at the Citi Unplugged Medtech and Life Sciences Access Day, Defendant Trachtman discussed Baxter's improvements to the Novum LVP prior to the United States launch.  Defendant Trachtman stated, "we were able to address all of those issues that came up [in the Canadian launch] and that was part of the submission to FDA. So now, from our standpoint, we've addressed everything and we're cautiously optimistic that we'll hear something in 2024."

52.     On March 22, 2024, Baxter published an informational PDF titled *Novum IQ LVP Sell Sheet*, touting the product's "advanced technology to enhance safety and ease of use," and "Titration Error Prevention technology, which allows Novum IQ pumps to intercept dose and rate changes that could be potentially harmful."

53.     On April 1, 2024, the Company published a press release announcing FDA clearance of the Novum LVP, in which Defendant Knight stated, "[Baxter's] goal, always, is to bring increased efficiency, safety and opportunity for informed decision-making to our customers, clinicians and the patients they serve. . . . The Novum IQ platform represents a meaningful shift in how connected and intelligent infusion therapy can impact the way clinicians provide care. Offering Novum IQ large volume and syringe infusion pumps unlocks the potential of advanced, intuitive technologies that customers seek to meet their needs."

54.     Available as early as April 5, 2024, Baxter published on its website: "The Novum IQ Infusion Platform isn't just a pump.  It's a next-generation infusion pump platform like no other: a fully integrated, intelligent infusion system designed to support complex infusion practices.  Its advanced features enhance the infusion therapy experience for clinicians, helping to improve efficiency, minimize human error and increase insight into infusion practices."  This remained publicly available on Baxter's website as of November 21, 2025.

55.     On May 2, 2024, Baxter filed with the SEC its Form 10-Q for the first quarter of 2024.  The Form 10-Q was signed by Defendant Grade and contained certifications by Defendants Almeida and Grade that attested to the purported accuracy and completeness of the Form 10-Q. Referring back to the purported risk disclosures in the 2023 Form 10-K (¶ 50), the Form 10-Q stated that "[w]e do not believe that there have been any material changes to the risk factors previously disclosed in our [2023 Form 10-K]."

56.     On May 7, 2024, at Baxter's annual shareholder meeting, Defendant Almeida discussed the FDA's approval of the Novum LVP, and described it as "an indication how a best-in-class pump will be deployed into hospitals with the integration into EMRs, creating an

13

environment, where clinicians can access a world-class drug library and [are] able to bring together a safer delivery of medication to the patient."

57. On May 15, 2024, at the Bank of America Healthcare Conference, Defendant Trachtman touted the Novum LVP's features, stating, "[the Novum LVP] has some great features. It has some of the most advanced features out there."

58. On June 5, 2024, at the Jefferies 2024 Global Healthcare Conference, Defendant Trachtman again touted the Novum LVP's features, stating, "[i]t has some of the most advanced safety features that are available."

59. On August 6, 2024, Baxter held an earnings call with analysts and investors to discuss the Company's fiscal second quarter 2024 financial results. During this earnings call, Defendant Almeida discussed the Novum LVP's technology, stating "we feel confident in the technology" and "[t]his is about providing our patients and our customers with the best technology on the market, not a reengineered technology from many, many years ago."

60. On the same day, Baxter filed with the SEC its Form 10-Q for the second quarter of 2024. The Form 10-Q was signed by Defendant Grade and contained certifications by Defendants Almeida and Grade that attested to the purported accuracy and completeness of the Form 10-Q. Referring back to the purported risk disclosures in the 2023 Form 10-K (¶ 50), the Form 10-Q stated that "[w]e do not believe that there have been any material changes to the risk factors previously disclosed in our [2023 Form 10-K]."

61. On a September 5, 2024 Wells Fargo investor call, Defendant Grade discussed how the Company improved the Novum LVP prior to the United States launch, explaining that "there's some bugs or some tweaks that we had to do within that product, we got a lot of that taken care of by the time we actually launched it in the US."

62. On the same call, Defendant Trachtman emphasized Novum LVP's advanced safety features, stating, "[w]e have the most advanced safety features in the largest drug library out there. . . ."

63. On November 12, 2024, Baxter filed with the SEC its Form 10-Q for the third quarter of 2024. The Form 10-Q was signed by Defendant Grade and contained certifications by Defendants Almeida and Grade that attested to the purported accuracy and completeness of the Form 10-Q. Referring back to the purported risk disclosures in the 2023 Form 10-K (¶ 50), the Form 10-Q stated that "[w]e do not believe that there have been any material changes to the risk factors previously disclosed in our [2023 Form 10-K]."

64. On November 20, 2024, Defendant Grade represented the Company at the Jefferies London Healthcare Conference. At this conference, Defendant Grade again assured investors that the Canadian roll-out improved the United States launch of the Novum LVP, stating "[w]e had that rollout in Canada for a while before we actually rolled it in the US. And so, there's a lot of opportunity to just work out any last kind of bugs and kinks in a way that's actually, had a really, again, a really smooth and impactful rollout of Novum here in the US."

65. On February 20, 2025, Baxter held an earnings call with analysts and investors to discuss the Company's fiscal fourth quarter and full year 2024 financial results. During this earnings call, Defendant Grade claimed, "[o]bviously, the Novum pump has been a resounding success. It's a differentiated product that, again, has gotten a great customer response."

66. On February 21, 2025, Baxter filed with the SEC its Form 10-K for the year ended December 31, 2024 (the "2024 Form 10-K"). The 2024 Form 10-K was signed by Defendants Shafer and Grade, and contained certifications by Defendants Shafer and Grade that attested to the purported accuracy and completeness of the 2024 Form 10-K. In the 2024 Form 10-K, the

15

Company purported to warn that its "success also depends on our ability to maintain and routinely improve product quality and our quality management program." The Company also purported to warn that "[a]n inability to address a quality or safety issue in an effective and timely manner may also cause negative publicity, potentially leading to a loss of customer confidence in us or our current or future products, which may result in the loss of sales and difficulty in successfully launching new products."

67. On March 5, 2025, at the TD Cowen Conference, Defendant Grade again touted the Novum LVP's customer approval, stating, "I think that the launch itself is something as a company, we're really proud of, and it has actually gone really well. And the product has been extremely well received. The demand level is high."

68. On May 1, 2025, Baxter held an earnings call with analysts and investors to discuss the Company's fiscal first quarter 2025 results. During this earnings call, Defendant Knight stated, "[a] lot of the pumps in the market have been a decade plus old. So, we're bringing new technology to the market with smarter, more sophisticated capabilities on interoperability with digital suites that are going to follow to supplement that launch. So good momentum around Novum and happy with the progress." Unknown to investors at the time, just about a week prior, on April 24, 2025, Baxter sent warnings letters to customers affected by the Novum LVP's technology issues.

69. On June 10, 2025, during a Goldman Sachs conference, Defendant Grade stated, "[the Novum LVP] is performing really well." This was just four days after the FDA announced that Baxter was providing customers with updated instructions for the Novum LVP and published Baxter's April 24, 2025 customer notice.

70. The statements in ¶¶ 35-69 were materially false and misleading. In truth, the Novum LVP lacked precision and was not receiving positive customer feedback. To the contrary,

16

the device was susceptible to chronic under-infusion and over-infusion, putting patients at risk. Further, the Company's risk warnings were misleading because Baxter's inability to address the Novum LVP's quality and safety issues had already harmed patients and caused a loss of customer confidence in the product.

## VI.     THE TRUTH EMERGES

71.     On May 20, 2025, the FDA issued a Class 1 Voluntary Recall on the Novum LVP due to software issues that caused the potential for under-infusion following use of the "standby mode" feature or if the device is powered off with the set loaded.  These disclosures caused the Company's stock price to decline by $1.03 per share, or 3.3%.

72.     Following these disclosures, the FDA published both of Baxter's notices to affected customers and revealed that as of June 27, 2025, Baxter has reported 79 serious injuries, and two deaths associated with the Novum LVP's technological issues.

73.     Then on July 31, 2025, that Defendants shocked investors by revealing that it had decided to "voluntarily and temporarily pause shipments and planned installations of the Novum LVP."  Importantly, Defendant Knight described this as "a decision we made a couple of weeks ago" that had been "communicated to [Baxter] customers."  As a result of these disclosures, Baxter's stock price declined by an additional $6.29 per share, or 22.4%.

74.     Analysts were shocked by the pause despite prior indications of issues with the Novum LVP.  For example, analysts with Wells Fargo stated that "while we have seen the recent FDA alert relating to under-infusion risk associated [with] Novum, the sales pause came as a surprise."

75.     Finally, on October 30, 2025, Baxter released its third quarter financial results, revealing that its third quarter top line performance came in lower than its previously issued

17

guidance, in part, due to lower Novum LVP sales resulting from the continuing shipment and installation hold the Company had instituted months earlier.

76.    On the same day, Baxter held an earnings call with analysts and investors to discuss the Company's fiscal third quarter 2025 results.  Defendant Grade revealed that the hold would remain in place indefinitely, noting that "[f]rom a timing standpoint, again, at this point, we're unable to commit to specific timing around the shipment and install for Novum LVP. We do anticipate this though being in place beyond 2025."  Defendant Grade also revealed that the Company was losing customers as "the timing and nature of the resolution of the Novum LVP hold is leading some customers to evaluate alternative solutions."

77.    Additionally, during the same October 30, 2025, earnings call, newly appointed CEO Andrew Hidler, successor to Defendant Shafer, announced that the Company intends to reduce the quarterly dividend to $0.01 per share, from its previous $0.17 per share, beginning with the dividend to be paid in January 2026.  As a result of these disclosures, Baxter's stock price declined by an additional $3.26 per share, or 14.5%.

78.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## VII.    LOSS CAUSATION

79.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

80.    During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  This artificially inflated the price of Baxter common stock and operated a fraud or deceit on the Class (as defined below).  Later, when Defendants' prior misrepresentations and fraudulent conduct were

18

disclosed to the market, the price of Baxter common stock fell precipitously as the prior artificial inflation came out of the price. As a result of their acquisition of Baxter common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## VIII. PRESUMPTION OF RELIANCE

81. At all relevant times, the market for Baxter common stock was efficient for the following reasons, among others:

a) Baxter's stock met the requirements for listing, and was listed and actively traded on the New York Stock Exchange, a highly efficient market, with an average 10-day trading volume of approximately 9.26 million shares;

b) As a regulated issuer, Baxter filed periodic reports with the SEC;

c) Baxter regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

d) Baxter was followed by numerous analysts employed by major brokerage firms who wrote reports that were distributed to those brokerage firms' sales forces and certain customers. Each of these reports was publicly available and entered the public marketplace.

82. As a result of the foregoing, the market for Baxter common stock promptly digested current information regarding Baxter from all public available sources and reflected such information in Baxter's stock price. Under these circumstances, purchasers of Baxter common stock at artificially inflated prices during the Class Period suffered similar injury through their transactions and a presumption of reliance applies.

83. In addition, Plaintiff is entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims asserted herein are predicated in part upon material omissions of fact that Defendants had a duty to disclose.

19

## IX. INAPPLICABILITY OF THE STATUTORY SAFE HARBOR AND BESPEAKS CAUTION DOCTRINE

84. Baxter's "safe harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

85. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements described in this Complaint. Many of the specific statements described herein were not identified as "forward-looking" when made. To the extent that there were any forward-looking statements, there was no meaningful cautionary language identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements described herein, Defendants are liable for those false forward-looking statements because at the time each was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer at Baxter who knew that the statement was false or misleading when made. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projections or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## X. CLASS ACTION ALLEGATIONS

86. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of a Class consisting of all those who purchased or otherwise acquired Baxter common stock between February 23, 2022, and October 29, 2025, inclusive, and who were

damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Baxter at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

87. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Baxter common stock was actively traded on the New York Stock Exchange. As of November 4, 2025, Baxter had approximately 514 million shares of common stock outstanding. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the proposed Class. Class members who purchased Baxter common stock may be identified from records maintained by Baxter or its transfer agent(s), and may be notified of this class action using a form of notice similar to that customarily used in securities class actions.

88. Plaintiff's claims are typical of Class members' claims, as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

89. Plaintiff will fairly and adequately protect Class members' interests and have retained competent counsel experienced in class actions and securities litigation.

90. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of fact and law common to the Class are:

    a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

    b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about Baxter;

    c) whether Defendants acted with scienter; and

21

d)  to what extent the members of the Class have suffered damages, as well as the proper measure of damages.

91.  A class action is superior to all other available methods for the fair and efficient adjudication of this action because joinder of all Class members is impracticable. Additionally, the damage suffered by some individual Class members may be relatively small so that the burden and expense of individual litigation makes it impossible for such members to individually redress the wrong done to them. There will be no difficulty in the management of this action as a class action.

## XI.  CLAIMS FOR RELIEF UNDER THE EXCHANGE ACT

### COUNT I

**FOR VIOLATIONS OF SECTION 10(b) OF THE EXCHANGE ACT AND SEC RULE 10b-5 PROMULGATED THEREUNDER (AGAINST ALL DEFENDANTS)**

92.  Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

93.  During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Baxter common stock at artificially inflated prices.

94.  Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Baxter common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

22

95. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

96. During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

97. Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal Baxter's true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

98. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Baxter common stock. Plaintiff and the Class would not have purchased Baxter common stock at the prices they paid, or at all, had they been aware that the market prices for Baxter common stock had been artificially inflated by Defendants' fraudulent course of conduct.

99. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

100. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## **COUNT II**

### **FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT**
### **(AGAINST THE INDIVIDUAL DEFENDANTS)**

101. Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

102. This Count is asserted on behalf of all members of the Class against the Individual Defendants for violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

103. During their tenures as officers and/or directors of Baxter, each of the Individual Defendants was a controlling person of the Company within the meaning of Section 20(a) of the Exchange Act. By reason of their positions of control and authority as officers and/or directors of Baxter, these Defendants had the power and authority to direct the management and activities of the Company and its employees, and to cause the Company to engage in the wrongful conduct complained of herein.

104. The Individual Defendants acted as controlling persons of Baxter within the meaning of Section 20(a) of the Exchange Act. In their capacities as senior corporate officers of the Company, the Individual Defendants had direct involvement in the day-to-day operations of the Company, including their power to control or influence the policies and practices giving rise to Baxter's misleading statements and power to control public statements about Baxter, and the power and ability to control the actions of Baxter and its employees.

105. The Individual Defendants were directly involved in disseminating Baxter's false and misleading statement during the Class Period, and made additional false and misleading statements in publicly-disseminated conference calls, testimony and statements on behalf of Baxter. As a result of the foregoing, the Individual Defendants, as a group and individually, were controlling persons of Baxter within the meaning of Section 20(a) of the Exchange Act.

24

106. Baxter violated Section 10(b) of the Exchange Act by its acts and omissions, as alleged in this Complaint. By virtue of their positions as controlling persons of Baxter, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act, jointly and severally to Plaintiff and other members of the Class who purchased or otherwise acquired Baxter common stock.

107. As a direct and proximate result of the Individual Defendants' conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchase or acquisition of Baxter common stock.

## XII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b) Awarding compensatory damages and equitable relief in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongful conduct, in an amount to be proven at trial, including interest thereon;

c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d) Such other and further relief as the Court may deem just and proper.

## XIII.  JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: December 3, 2025                                      Respectfully submitted,

                                              **BERNSTEIN LITOWITZ BERGER**
                                                **& GROSSMANN LLP**

                                              */s/ Avi Josefson*
                                              Avi Josefson
                                              875 North Michigan Avenue, Suite 3100
                                              Chicago, Illinois 60611

Telephone: (312) 373-3880
Facsimile: (312) 794-7801
avi@blbglaw.com

-and-

Hannah Ross
Scott R. Foglietta
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Plaintiff City of Hallandale Beach Police Officers' and Firefighters' Personnel Retirement Trust*

Robert D. Klausner
**KLAUSNER KAUFMAN JENSEN
  & LEVINSON**
7080 Northwest 4th Street
Plantation, FL 33317
Telephone: (954) 916-1202
bob@robertdklausner.com

*Additional Counsel for Plaintiff City of Hallandale Beach Police Officers' and Firefighters' Personnel Retirement Trust*

26

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Alan B. Miller, on behalf of City of Hallandale Beach Police Officers' and Firefighters' Personnel Retirement Trust ("Hallandale Beach"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Chairman of Hallandale Beach. I have reviewed the complaint with the Hallandale Beach's legal counsel. Based on legal counsel's knowledge and advice, Hallandale Beach has authorized the filing of the complaint.

2. Hallandale Beach did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Hallandale Beach is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Hallandale Beach's transactions in the Baxter International, Inc. securities that are the subject of this action are set forth in the chart attached hereto.

5. Hallandale Beach has sought to serve as a lead plaintiff and representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion or was not appointed lead plaintiff:

   *Ryan v. FIGS, Inc.*, No. 22-cv-7939 (C.D. Cal.)[1]

6. Hallandale Beach will not accept any payment for serving as a representative party on behalf of the class beyond Hallandale Beach's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___ day of November, 2025.

_____
Alan B. Miller
Chairman
*City of Hallandale Beach Police Officers' and*
*Firefighters' Personnel Retirement Trust*

---

[1] Prior to seeking appointment as lead plaintiff, Hallandale Beach filed a separate securities class action against FIGS, Inc. on December 8, 2022, which was subsequently consolidated into the *Ryan* action. *See City of Hallandale Beach Police Officers' & Firefighters' Pers. Ret. Tr. v. FIGS, Inc.*, No. 22-cv-8912 (C.D. Cal.).