# EXHIBIT C

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ELECTRICAL WORKERS PENSION FUND, LOCAL 103, I.B.E.W., Individually and on Behalf of All Others Similarly Situated, | Case No. 1:25-cv-12672 |
| | Honorable Steven C. Seeger |
| Plaintiff, | CLASS ACTION |
| v. | |
| BAXTER INTERNATIONAL, INC., JOSE E. ALMEIDA, BRENT SHAFER, JOEL T. GRADE, JAMES K. SACCARO, BRIAN STEVENS, HEATHER KNIGHT, and CLARE TRACHTMAN, | |
| Defendants. | |
| CITY OF HALLANDALE BEACH POLICE OFFICERS' AND FIREFIGHTERS' PERSONNEL RETIREMENT TRUST, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:25-cv-14712 |
| | Honorable John F. Kness |
| Plaintiff, | CLASS ACTION |
| v. | |
| BAXTER INTERNATIONAL, INC., JOSÉ E. ALMEIDA, BRENT SHAFER, JOEL T. GRADE, JAMES K. SACCARO, BRIAN STEVENS, HEATHER KNIGHT, and CLARE TRACHTMAN, | |
| Defendants. | |

**JOINT DECLARATION OF KYLE L. HANSON, JOHN MCINTIRE, AND OSEY "SKIP" MCGEE JR. IN SUPPORT OF THE MOTION OF THE PENSION FUNDS FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL**

We, Kyle L. Hanson, John McIntire, and Osey "Skip" McGee Jr., pursuant to 28 U.S.C. § 1746, declare as follows:

1.  We respectfully submit this Joint Declaration in support of the motion of the Nebraska Investment Council ("Nebraska"), the National Elevator Industry Pension Fund ("National Elevator"), and Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs") (collectively, the "Pension Funds"), for: (i) consolidation of the above-captioned related actions; (ii) appointment as Lead Plaintiff in the above-captioned securities class action against Baxter International, Inc. ("Baxter" or the "Company") and certain of the Company's current senior executives (collectively, "Defendants"); and (iii) approval of the Pension Funds' selection of Labaton Keller Sucharow LLP ("Labaton") and Bernstein Litowtiz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the proposed Class.  We are informed of and understand the requirements and duties of the Lead Plaintiff imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), including the selection and retention of counsel, and overseeing the prosecution of the action.  We each have personal knowledge about the information in this Joint Declaration relating to the institution with which we are respectively associated.

2.  I, Kyle L. Hanson, am the General Counsel in the Office of the Attorney General of the State of Nebraska and am authorized to make this declaration on its behalf.  The Attorney General is statutorily authorized to represent Nebraska in this litigation and I am authorized to make this Joint Declaration on its behalf.  Nebraska is an independent state agency that provides investment management services for the people of the State of Nebraska.  Currently, Nebraska manages $44.3 billion on behalf of the people of the State of Nebraska.  As reflected in its certification, Nebraska purchased Baxter common stock during the Class Period and suffered

substantial losses on those investments as a result of the violations of the federal securities laws alleged in this action.

3.     Nebraska is a sophisticated institutional investor with experience supervising counsel and acting as a fiduciary.  Nebraska understands and accepts the duties and responsibilities with which a lead plaintiff is charged under the PSLRA, including to oversee and supervise the litigation separate and apart from counsel.  Nebraska's familiarity with the PSLRA is informed by, among other things, its experience successfully serving as lead plaintiff in other securities class actions, including in cases in which it worked together with other institutional investors.  Indeed, Nebraska served as the lead plaintiff in *In re Okta, Inc. Securities Litigation*, No. 22-cv-2990 (N.D. Cal.), with Labaton as lead counsel, and recovered $60 million for investors.  In addition, Nebraska is currently serving as lead plaintiff, alongside two other institutional investors, in *In re Fidelity National Information Services, Inc. Securities Litigation*, No. 23-cv-252 (M.D. Fla.), with Labaton serving as lead counsel.

4.     I, John McIntire, am a partner at O'Donoghue & O'Donoghue LLP.  I serve as counsel to National Elevator, and am authorized to make this declaration on its behalf.  National Elevator provides pension and other benefits for participating elevator mechanics, assistant mechanics, helpers, apprentices, and probationary apprentices.  As of June 30, 2025, National Elevator managed $11.27 billion in assets for the benefit of its members and beneficiaries.  As reflected in its certification, National Elevator purchased Baxter common stock during the Class Period and suffered substantial losses on those investments as a result of the violations of the federal securities laws alleged in this action.

5.     National Elevator is a sophisticated institutional investor with extensive experience supervising counsel and acting as a fiduciary.  National Elevator understands and accepts the duties

and responsibilities with which a lead plaintiff is charged under the PSLRA, including to oversee and supervise the litigation separate and apart from counsel. National Elevator's familiarity with the PSLRA is informed by, among other things, its experience successfully serving as lead plaintiff in other securities class actions, including working together with other Pension Funds. Accordingly, National Elevator has achieved significant recoveries for investors when serving as a lead plaintiff or class representative in several other securities class actions, including in cases in which it worked together with other institutional investors. *See*, *e.g.*, *In re Twitter, Inc. Sec. Litig.*, No. 16-cv-5314 (N.D. Cal.) (National Elevator served as class representative and recovered $809.5 million for investors); *In re Verifone Holdings, Inc. Sec. Litig.*, No. 07-cv-6140 (N.D. Cal.) (National Elevator served as lead plaintiff and recovered $95 million for investors); *In re Baxter Int'l Inc. Sec. Litig.*, No. 10-cv-6016 (N.D. Ill.) (National Elevator served as lead plaintiff and recovered $42.5 million for investors). In addition, National Elevator is currently serving as lead plaintiff, alongside two other institutional investors, in *Chow v. Archer-Daniels-Midland Company*, No. 24-cv-634 (N.D. Ill.).

6.     I, Osey "Skip" McGee Jr., am the Executive Director of Louisiana Sheriffs and am authorized to make this declaration on its behalf. Louisiana Sheriffs is a public pension fund that provides pension and other benefits for sheriffs, deputy sheriffs, and tax collectors in the State of Louisiana. As of December 30, 2024, Louisiana Sheriffs managed $5.09 billion in assets for the benefit of these active and retired employees and their beneficiaries. As reflected in its certification, Louisiana Sheriffs purchased Baxter common stock during the Class Period and

3

suffered substantial losses on those investments as a result of the violations of the federal securities laws alleged in this action.

7. Louisiana Sheriffs is a sophisticated institutional investor with extensive experience supervising counsel and acting as a fiduciary. Louisiana Sheriffs understands and accepts the duties and responsibilities with which a lead plaintiff is charged under the PSLRA, including to oversee and supervise the litigation separate and apart from counsel. Louisiana Sheriffs' familiarity with the PSLRA is informed by, among other things, its experience successfully serving as lead plaintiff in several other securities class actions, including working together with other institutional investors. Indeed, Louisiana Sheriffs has achieved outstanding results for investors when serving as a lead plaintiff or class representative in other securities class actions, having recovered over $3 billion for investors in those cases. *See, e.g.*, *In re Wells Fargo & Co. Sec. Litig.*, No. 20-cv-4494 (S.D.N.Y.) (Louisiana Sheriffs served as lead plaintiff alongside three other Pension Funds, with Bernstein Litowitz as co-lead counsel, and recovered $1 billion for investors); *In re Citigroup Inc. Bond Litig.*, No. 08-cv-9522 (S.D.N.Y.) (Louisiana Sheriffs served as lead plaintiff alongside six other Pension Funds, with Bernstein Litowitz as lead counsel, and recovered $730 million for investors); *In re Luckin Coffee Inc. Sec. Litig.*, No. 20-cv-1293 (S.D.N.Y.) (Louisiana Sheriffs served as lead plaintiff alongside another institutional investor, with Bernstein Litowitz as co-lead counsel, and recovered $175 million for investors); *La. Sheriffs' Pension & Relief Fund v. Merrill Lynch & Co.*, No. 08-cv-9063 (S.D.N.Y.) (Louisiana Sheriffs served as lead plaintiff alongside another institutional investor, with Bernstein Litowitz as lead counsel, and recovered $150 million for investors). In addition, Louisiana Sheriffs is also currently serving as lead plaintiff alongside another institutional investor in *Patel v. Edwards Lifesciences*

4

*Corporation*, No. 8:24-cv-02221 (C.D. Cal.), where Louisiana Sheriffs recently defeated the defendants' motion to dismiss.

8.      The Pension Funds are each strongly motivated to recover the losses that they and the Class incurred as a result of Defendants' alleged violations of the federal securities laws and believe the alleged misconduct at the heart of this case raises significant public policy concerns for the integrity of the public markets, as well as for the welfare of patients who were harmed by Baxter's Novum IQ Large Volume Pump.  The Pension Funds' primary goal in seeking to serve as Lead Plaintiff in this case is to maximize the recovery for the Class from all culpable parties. Accordingly, we believe that this case should be prosecuted by sophisticated institutional investors, like the Pension Funds, that have a significant financial interest in the claims against Defendants to ensure that the claims are litigated vigorously, efficiently, and in the best interests of the Class, in accordance with their duties under the PSLRA.

9.      The Pension Funds each followed their own deliberative process to determine whether to pursue a leadership position in this case.  As part of those processes, which included full consideration of the merits of the claims by decision-makers for each institution, as well as consideration of the substantial economic interest that the Pension Funds each have in this action, the Pension Funds each independently determined to seek appointment as Lead Plaintiff in this case, and informed their respective counsel, Labaton or Bernstein Litowitz, of their decision.

10.      As part of the Pension Funds' standard processes for considering a leadership role in securities class actions, they each considered whether there would be an opportunity to work with other sophisticated institutional investors in seeking Lead Plaintiff appointment, and whether doing so would be in each of their respective interests and in the best interest of the Class.  In this case, the Pension Funds each determined that their joint leadership of this action would benefit the

Class because they are like-minded institutional investors that share a commitment to prosecuting the interests of the Class and seeking accountability from all culpable parties.

11.     Further, the Pension Funds understand that the PSLRA permits lead plaintiff groups that function separate and apart from their lawyers and that are able to oversee and direct the litigation in the best interests of the Class.  Based on the Pension Funds' prior experience successfully serving as part of lead plaintiff groups, the Pension Funds have seen firsthand how such partnerships can benefit the leadership of securities class actions by allowing institutions to work collaboratively to oversee the prosecution of an action, share resources, and provide input on case strategy and prosecution.  The Pension Funds intend to prosecute this action in a similarly collaborative manner.

12.     Pension Funds' prior experiences working with other institutional investors in PSLRA actions also demonstrate that a small, cohesive group of sophisticated fiduciaries informed by diverse perspectives has a positive effect on the quality of the representation provided to class members, especially in complex actions such as this one.

13.     For these reasons, among others, the Pension Funds each determined that they could maximize the Class's recovery by pooling their respective resources and experience and jointly seeking appointment as Lead Plaintiff.  The decision to jointly move together as Lead Plaintiff also follows from the Pension Funds shared roles as fiduciaries to protect and maximize assets held for the benefit of their funds' participants.

14.     Given the common goals and incentives of the Pension Funds to maximize the Class's recovery in this case, as well as their shared roles as fiduciaries to protect and maximize assets held for the benefit of their funds' participants, none of the Pension Funds envision having any dispute relating to their oversight of this action.  However, in the unlikely event that any such

disputes arise, we plan to engage in thorough discussion with each other and our counsel to come to a resolution.

15. Prior to seeking appointment as Lead Plaintiff, representatives of the Pension Funds participated in a conference call to discuss the funds' leadership of this litigation and commitment to jointly prosecuting this action. During the conference call, representatives of the Pension Funds discussed, among other things: the facts and the merits of the claims; the strategy for the prosecution of this litigation; the experience of our respective institutions in prosecuting shareholder litigations; and our interest in serving together as Lead Plaintiff. The Pension Funds believe that by working together here, they will, among other things, ensure that all of the Class's claims are efficiently and zealously prosecuted through their oversight of their proposed Lead Counsel, Labaton and Bernstein Litowitz.

16. Moreover, the Pension Funds are each highly motivated to recover the substantial losses incurred by our respective funds and intend to share their perspectives, experiences, and resources to direct this litigation. To this end, representatives of the Pension Funds have exchanged their respective contact information and have discussed with each other the importance of joint decision-making and maintaining open lines of communication, and we have acknowledged that the Pension Funds have in place procedures that will enable each of them to confer, with or without their counsel, via telephone and/or email on short notice to ensure that they are able to make timely decisions.

17. The Pension Funds also understand that it is the Lead Plaintiff's obligation under the PSLRA to select qualified counsel to represent the Class, and to supervise Lead Counsel's prosecution of the case to ensure that the action is prosecuted without unreasonable cost or duplication of effort. The Pension Funds decided to seek joint Lead Plaintiff appointment, in part,

7

because of their shared desire to ensure that this action is prosecuted in an economical matter. As Lead Plaintiff, they will ensure that Lead Counsel acts pursuant to their mandate. Through their oversight of counsel, the Pension Funds each believe that Labaton and Bernstein Litowitz will prosecute this action in a cost-effective manner and in the best interests of all Class members.

18. The Pension Funds are familiar with the experience, resources, and success of both Labaton and Bernstein Litowitz, and they are aware that they are accomplished law firms with established records of obtaining significant recoveries from defendants in securities fraud class actions like this case. Further, the Pension Funds understand that Labaton and Bernstein Litowitz each conducted an extensive investigation and analysis into the claims against Baxter and filed the only two complaints asserting these claims against Baxter. The Pension Funds each believe that Labaton's and Bernstein Litowitz's demonstrated histories of effectively litigating complex class action lawsuits provides further comfort that proposed Lead Counsel is well-qualified to represent the Class and will vigorously prosecute this action in a cost-effective manner and in the best interests of all Class members.

19. The Pension Funds are also aware that not only are Labaton and Bernstein Litowitz each well-qualified and experienced law firms in their own right, but they have a successful track record of working together cooperatively as co-lead counsel. For instance, Labaton and Bernstein Litowitz served as co-lead counsel in: *In re Schering-Plough Corporation/ENHANCE Securities Litigation*, No. 2:08-cv-397 (D.N.J.) (achieving a recovery of $473 million for investors); *Eastwood Enterprises LLC v. Farha*, No. 8:07-cv-1940 (M.D. Fla.) (achieving a recovery of $200 million for investors); and *In re SCANA Corporation Securities Litigation*, No. 3:17-cv-2616 (D.S.C.) (achieving a recovery of $192.5 million for investors). We believe that Labaton and

8

Bernstein Litowitz have the experience and ability to work together cooperatively and in a cost-effective manner in this litigation.

20.     The Pension Funds are committed to satisfying the fiduciary obligations that they will assume if appointed Lead Plaintiff, including conferring with counsel regarding litigation strategy and other matters, attending court proceedings, depositions, any settlement mediations and hearings as needed, and reviewing and authorizing the filing of important litigation documents. Through these and other measures, the Pension Funds will ensure and hereby reaffirm that the securities class action against Baxter will be vigorously prosecuted consistent with the Lead Plaintiff's obligations under the PSLRA and in the best interests of the Class.

**[REMAINDER INTENTIONALLY BLANK]**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements relating to Nebraska are true to the best of my knowledge.

Executed this 15th day of December, 2025.

*Kyle L. Hanson*

_____ Kyle Hanson

Kyle L. Hanson
General Counsel
*On behalf of Nebraska*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements relating to National Elevator are true to the best of my knowledge.

Executed this 15th day of December, 2025.


*John McIntire*

John McIntire
Partner at O'Donoghue & O'Donoghue LLP
*On behalf of National Elevator*

I declare, based on my own knowledge and information provided to me by legal counsel, that the foregoing statements relating to Louisiana Sheriffs are true to the best of my knowledge. Executed this 15th day of December, 2025.

Osey "Skip" McGee Jr.
Executive Director
*On behalf of Louisiana Sheriffs*